Fitchpatrick v. The Hawkeye Insurance Company.

FITCHPATRICK v. THE HAWKEYE INSURANCE COMPANY.

1. **Insurance**: WAIVER OF CONDITION: UNOCCUPIED BUILDING. Where a policy of insurance contained a provision that the company should not be liable for any loss occurring when the property was unoccupied, and further provided that, among other things, the facts in regard to the occupancy should be shown by the proofs of loss, which should be submitted before the policy became payable, it was held that the company did not waive the right to insist upon the forfeiture by requiring the proofs to be submitted, after being orally informed of the loss, and that the property was unoccupied at the time it occurred.

*Appeal from Story District Court.*

THURSDAY, APRIL 8.

ACTION upon a policy of insurance. The cause was tried by the court without a jury, and judgment was rendered for plaintiff; defendant appeals. The facts of the case appear in the opinion.

*R. W. Barger* and *Miller & Godfrey*, for appellant.

*Dyer & Fitchpatrick*, for appellee.

BECK, J.—I. No questions are raised in regard to the issuing of the policy, and the destruction by fire of the house insured. The policy contained a condition to the effect that the company should not be liable for any loss during the time the building should be vacant or unoccupied. The answer sets up a breach of this condition, alleging that the building

was vacant and unoccupied when it was destroyed. The plaintiff in reply avers that defendant waived the forfeiture of the policy by reason of the house being vacant, by requiring proof of the loss after having knowledge of the fact that the building was unoccupied when destroyed.

II. The controlling question in the case is this: Did defendant waive the condition of the policy under which it was relieved of liability, by reason of the house being vacant? We will proceed to the consideration of this question.

1. INSURANCE: waiver of condition: unoccupied building.

By an agreed statement of facts, it was admitted that the house was unoccupied when destroyed, and that notice of loss and proof of loss, and more specific proofs, at the request of defendant, were furnished by plaintiff. The only evidence touching the subject of waiver, as pleaded by plaintiff, in addition to the admissions above stated, was the testimony of plaintiff himself. Upon this point he testifies as follows:

" I understood that the tenant had moved out. I knew of his having moved out about two weeks before the loss. After the loss I was at Des Moines—I was on my way to Des Moines at the time of the loss—and I went to the office of the company and notified them and inquired about it. The loss occurred on the morning of the 6th of February. At the office of the company I found the secretary, Mr. Howell, and Mr. Hyde, the adjuster. I talked with them about the loss. I told Mr. Howell that the premises at the time the loss occurred were not occupied by a family. One of them, I don't know which, inquired particularly about the premises and who lived in them. I told him that Mr. Burns had been living there, and that the premises were unoccupied at the time of the fire; they said nothing of the condition of the policy. Mr. Hyde requested me to get the exact date when Mr. Burns moved out, and all the particulars about it. There was nothing said about furnishing proofs of loss at that time, but to get all the dates and all the particulars about the fire. I got the dates and all the facts, and forwarded to the com-

pany, with proofs of loss, the first about the 17th of Febru-
ary. I received the letter marked 'A' about the 19th of Feb-
ruary. After receiving that letter, I went to work and proved
more complete, according to the printed forms furnished.
The letter is signed by Mr. Howell, secretary of the company.
I sent these last proofs to the company."

 *  *  *  *  *  *

"In the conversation in the office of the company neither
Mr. Howell nor Mr. Hyde said anything about the company
not being liable because the building was vacant. There was
nothing said about it at the time. In that conversation I
asked them to adjust the loss. They replied that Mr. Hyde
would come up in a few days and *examine into the matter;*
nothing was said then about the company not being liable on
account of non-occupancy. Mr. Hyde came up in a few days,
and I met him at his room in the hotel. He didn't talk any-
thing about it anywhere else. This was about the 13th of
February. He inquired into the particulars of it. He asked
what was in the house at the time it was burned. I told him,
and we discussed the matter of vacancy. He did not say
whether the company would pay or not, but all he said was,
that he was only to investigate the matter, and he could not
tell what the company would do. Before we got through, I
told him I had the proofs of loss about prepared, and I had
better send them on, and he said 'yes, of course send in the
proofs of loss.' He did not tell me that the company was
not liable because of the non-occupancy of the house; he said
he could not say whether the company would pay or not.
He did not refuse to take my proofs of loss, but said I had
better send them in to the company. I told him I had pre-
pared, and could get them ready for him by the time he went
away, and he said 'just send them direct to the company.' I
knew, or supposed, that Mr. Hyde was the adjuster of the
company at that time."

 *  *  *  *  *  *

"The question of vacancy was discussed between us at that

time, but it was not determined whether the company would pay the loss or not. Mr. Hyde told me he could not determine this question, that it was beyond his power to say whether the company would or would not pay. He told me his business was to collect the facts, and told me to forward the proofs to the company. I did not ask the company to send an adjuster to take my proofs."

\*     \*     \*     \*     \*     \*

" I asked Mr. Hyde whether he would take the proofs I made out, or whether I should send them to the company, and he said, 'send them to the company.' He gave me no reason for not taking the proofs. His business here was to examine into a loss by Mr. Hill, and he saw me and told me he would inquire into mine at the same time. In the conversation I had with the secretary and the adjuster in the office of the company, I told them that the tenant had moved out, but I did not know whether he left anything in the house or not, and they said to me to find out certainly all the facts. They did not say to me that if the tenant had moved out the company was not liable. Mr. Hyde said it was important to know the date the tenant moved out. I said I would find out and report. He said to let him know when he came up, and to find out all the particulars about it. I did let him know, when he came up, the dates when the tenant moved out of the house, and all about it. He made no reply when I gave him this information. His part was to ask questions and I to answer them. The tenant told me about the matter, and I reported to Mr. Hyde. Mr. Hyde did not take my proofs of loss. I did that myself. I did not have them made out at the time Mr. Hyde was here. I completed them and sent them to the company by mail. I sent them on the 15th of February, I think."

\*     \*     \*     \*     \*     \*

" Mr. Hyde was present when I was at defendant's office. They told me to ascertain all the facts and report them to Mr. Hyde when he came up, and I did that, and when he

came up he told me to send my proofs to the company. He did not say whether the company would pay the loss or not. I asked him about it, and he said he could not tell."

The plaintiff also testified that in preparing the second proofs of loss he expended four dollars and "a good deal of time."

Counsel for plaintiffs insists that the defendant, in demanding proofs of loss after notice to its officers that the property was unoccupied, waived the forfeiture of the policy under the condition providing that there shall be no liability in case the house be vacant at the time of the loss. The position is based upon this principle: A party to a contract having the right to declare it forfeited, must exercise that right when called upon to act under the contract. He cannot recognize the contract as binding, and afterward insist upon the forfeiture. The correctness of this doctrine cannot be doubted. We will inquire whether it is applicable to the case before us.

The policy in suit contained the following condition: "All persons having a claim under this policy for loss or damage * * * * shall give immediate notice, and render a particular account thereof, stating the time, origin and circumstances of the fire, *the occupancy of the building insured* or containing insured property at the time of the loss, * * * * all of which shall be duly verified by affidavit; if required shall be examined and re-examined under oath by any person appointed by the company * * touching all questions relating to the claim, and shall subscribe the same, and until such proofs are rendered and examinations submitted to (if required) the loss shall not become payable." * * * * Under this condition plaintiff had no claim or right of action upon the policy until the proofs required were made. *Edgerly v. Farmer's Insurance Company*, 43 Iowa, 587. This is true even though the condition of occupancy had been waived. Compliance with this condition was an essential prerequisite. Now it

cannot be claimed that defendant by requiring plaintiff to comply with this condition waived the other condition requiring the building to be occupied. The very object of the condition just quoted from the policy is to secure information which will enable defendant to determine, among other things, whether the building was occupied. Plaintiff cannot claim that such information may be imparted to defendant in a manner different from that provided for by the policy; the parties must be governed by its terms. The plaintiff's position involves a total disregard of a condition of the policy in order to support his theory of waiver.

The proofs were not furnished upon the request of defendant after the loss, but in pursuance of the obligation of plaintiff, as expressed in the policy; without them plaintiff would have no cause of action. Defendant, therefore, in requiring plaintiff to submit the proof, did not impose upon him labor and expense not required by the terms of the policy. The plaintiff was required to do nothing more than he bound himself to do when he accepted the policy. His act done in discharge of his contract will not estop defendant to insist on the conditions of the policy. In view of these considerations we think the decisions cited by counsel upon the subject of waiver are not applicable in this case.

*Webster v. The Phœnix Insurance Company*, 36 Wis., 67, and *The M. W. Mutual Life Insurance Company v. Germania Fire Insurance Company*, 40 Wis., 446, are relied upon by plaintiff's counsel. These cases hold that a demand of proof of loss by the Underwriter waives a forfeiture for non-performance of conditions of the policy. We think they may be distinguished from the case before us upon the following considerations: In the Wisconsin cases the Underwriters had full notice of the facts and circumstances which under the policy would, at their election, operate to forfeit them, and while possessing such knowledge, they demanded proofs of loss. In this case it will be observed that defendant did not have full notice of the time during which the build-

ing had been unoccupied, and the circumstaces attending the vacancy of the house; notice of these things were imparted by the proofs of loss. In the Wisconsin cases the Underwriters had as full notice of the facts operating to forfeit the policy when they demanded proofs of loss as defendant herein had after the proofs of loss were supplied at its request.

We reach the conclusion that the condition of the policy in suit against permitting the building to remain unoccupied was not waived. The *breach of this condition defeats recovery upon the policy. *Dennison v. The Phœnix Insurance Company*, 52 Iowa, 457.

Other questions discussed by counsel need not be considered. A motion by defendant to strike from the record plaintiff's amended abstract is not passed upon, for the reason that the disposition we make of the case renders it unimportant.

REVERSED.