HOME FIRE INSURANCE COMPANY OF OMAHA V.
CATHARINE KENNEDY.

FILED FEBRUARY 18, 1896.   No. 6184.

1. **Insurance: FAILURE TO DECLARE FORFEITURE: WAIVER OF
   BREACH OF WARRANTY.** An insurance company which,
   after a loss of the property covered by its policy, with a
   knowledge of acts amounting to a breach of warranty by
   the insured, fails to declare such policy forfeited, but, on
   the contrary, continues to recognize its liability thereon,
   by demanding repeated proofs of loss, and by insisting
   upon arbitration under a stipulation which applies to
   the measure of damage only, will be *held* to have waived
   all defenses based upon such breach of warranty and
   resulting forfeiture of the policy.

2. ———: ———: ———. So *held*, notwithstanding the sec-
   retary of the defendant company, in returning the proof
   of loss for correction, added: "This company neither ad-
   mits nor denies its liability nor waives any of its rights
   under said policy."

3. ———: ARBITRATION. A stipulation for arbitration which
   does not provide for submitting the matters in dispute
   to a particular person or tribunal, but to one or more
   persons to be mutually chosen, is revocable by either
   party, and will not oust the jurisdiction of the courts
   having cognizance of the subject of the controversy.

4. ———: ———: WAIVER. An insurance company, by deny-
   ing its liability on the ground of a forfeiture of the
   policy by reason of a breach of warranty by the insured,
   waives whatever right it may have had to insist upon
   arbitration as a means of determining the amount of the
   plaintiff's damage.

ERROR from the district court of Douglas
county.   Tried below before DOANE, J.

*Jacob Fawcett*, for plaintiff in error.

*I. J. Dunn* and *Martin Langdon, contra.*

Post, C. J.

This was an action by the defendant in error, Catharine Kennedy, against the plaintiff in error, the Home Fire Insurance Company of Omaha, upon a policy of insurance. The defendant company for answer admitted the insuring of the plaintiff's property, to-wit, a two-story frame and brick building, and that said building was destroyed by fire within the period covered by said policy. It, however, alleged that said policy was not in force at the time of the loss, for reasons which will be hereafter noticed. A trial was had in the district court for Douglas county, resulting in a verdict and judgment for the plaintiff below, which has been removed into this court for review by the defendant company.

It is first contended that the risk was increased in violation of the policy, (1) from the fact that the building described therein was at the time of the loss used and occupied as a tenement house, whereas it was insured as a private dwelling only; (2) by the use and keeping therein of gasoline in excess of the amount permitted by the policy. In support of the first of the alleged violations we are referred to the following questions and answers shown by the application for the policy: "Q. Is the house occupied for private dwelling only? A. Yes. Q. By owner? A. Yes." And also to the following conditions of the policy: "Or if the risk be increased in any manner without consent indorsed hereon, *  *  *  then this policy shall be null and void." It is not claimed that the representations of the insured respecting the occupancy of the premises at the date of the policy were false as to any essential fact. The only evi-

dence we discover bearing upon that question is the following testimony of the defendant in error, Mrs. Kennedy:

Q. Who was occupying the house at the time the policy was issued, March 30, 1889?

A. I could not say whether there was any one but myself or not.

Q. The house was not complete at the time the policy was issued?

A. No, sir.

It is, however, contended that the foregoing condition of the policy, in connection with the application, is to be construed as a continuing warranty or affirmative agreement that the validity of the said policy should depend upon the literal fulfillment of the contract by the insured. Applying the rule thus asserted to the facts disclosed by this record, counsel argue that the policy is void and of no effect, for the reason that there were at the time of the loss, in addition to the family of the insured, consisting of herself and son, three families occupying rooms in said house, although the record is silent respecting the number of such occupants or the character of their tenure. It is deemed unnecessary to review the many authorities cited in support of that contention, since it is, we think, conclusively shown that the defendant company has, by its action subsequent to the loss, waived whatever right it may have had to declare the policy void on account of the facts stated, or by reason of the violation of the condition regarding the keeping of gasoline in the building insured. The company, according to the testimony of its own witnesses, was fully advised of the facts constituting the alleged violation of the contract by the insured, five days

after the loss, to-wit, on March 16, 1891. Fourteen days later, on March 30, the plaintiff below served upon the defendant what appears to be formal proof of loss, sworn to before a notary public and attested by two disinterested neighbors, in the presence of a justice of the peace. On the same day Mr. Barber, secretary of the defendant company, acknowledged the receipt thereof as follows:

"OMAHA, NEB., March 30, 1891.

"Mrs. Catharine Kennedy, Holder of Policy No. 30715, Issued by the Home Fire Insurance Company of Omaha, Nebraska.

"Papers purporting to be proofs of an alleged loss under said policy have been received, but same are irregular, defective, and deficient, in that they do not comply with the terms of the said policy, in that it requires that proofs duly executed and sworn to by the *assured* under the said policy be made and furnished the said company. *You* have been required, and are hereby required, to *render under oath* a particular account of said alleged loss, setting forth the date and circumstances of the same, together with title, occupancy, and other insurance, if any, and itemized estimate of the value of the property destroyed, said proofs to be *signed* and *executed* in accordance with the terms of said policy. No estimate of the said building insured under the said policy, nor the alleged damage thereto, made by J. P. Gardiner, nor any other person, have been furnished this company by you. The papers purporting to be proofs of loss are not signed and sworn to by *you*, and are defective and deficient as to every requirement of said policy, the same are herewith returned declined.

"The said company neither admits nor denies liability, nor waives any of its rights under said policy.

"Very truly,          CHAS. J. BARBER,
          *"Secretary Home Fire Insurance Company."*

In accordance with the direction contained in the above communication the plaintiff, on April 1, served upon the company an additional, or, as described by the witnesses, an amended proof of loss, which was likewise returned, accompanied by the following letter:

"OMAHA, NEB., April 3, 1891.
"Mrs. Catharine Kennedy, Holder of Policy No. 30715, Issued by the Home Fire Insurance Company of Omaha, Neb.

"MADAM: Papers purporting to be proof of your alleged loss and damage under the said policy have been received, but same are defective, deficient, and incomplete, in that they do not fully set forth the occupancy of the said building alleged to have been damaged, nor are they accompanied by an itemized estimate of value of property destroyed, nor are said alleged proofs signed by two ·disinterested neighbors, nor by nearest magistrate, as required by terms of the said policy. The estimates given in said proofs are in lump, and not itemized, and are not made by competent party. The estimate must be specific and in detail in order to be an itemized estimate. The papers are therefore herewith returned, declined.

"Very truly,          CHAS. J. BARBER,
          *"Secretary Fire Insurance Company."*

And on April 6 the plaintiff prepared and served a third statement of her loss, which, so far as appears, conforms to all the suggestions of the

defendant company.   She was in the meantime
notified by the defendant of its election to arbi-
trate the differences between them, by letter of
Mr. Barber, under date of March 31, in the follow-
ing language:

"OMAHA, March 31, 1891.

"Mrs. Catharine Kennedy, Holder of Policy No.
    30715, Issued by the Home Fire Insurance
    Company of Omaha.

"MADAM: Arbitration of the differences that
have arisen between you and the said company,
as to the actual damages by fire to building in-
sured under the said policy, is hereby demanded.
Please name arbitrator and date agreeable to
have said arbitration take place.   The said com-
pany, by calling for arbitration, neither admits
nor denies liability, nor waives any of its rights
under the said policy.

"Very truly,        CHAS. J. BARBER,
        "*Sec. Home Fire Insurance Company.*"

The foregoing was followed by communications
bearing date of April 3d, 4th, 8th, and 24th, each,
in positive terms, demanding arbitration in ac-
cordance with a provision of the policy for the
adjustment by that means of controversies relat-
ing to the amount of loss or damage by the in-
sured.

In *Hollis v. State Ins. Co.*, 65 Ia., 454, the rule is
thus stated: "Where the insured, at the time of
the loss, has forfeited his right to recover on the
policy, and the company, knowing the facts, con-
tinues to treat the contract as of binding force,
thereby inducing the insured to act and incur ex-
pense in that belief, the company thereby waives
the forfeiture;" and in *Titus v. Glens Falls Ins.
Co.*, 81 N. Y., 410, we observe the following

language: "But it may be asserted broadly that
if, in any negotiations or transactions with the
insured, after knowledge of the forfeiture, it (the
insurer) recognizes the continued validity of the
policy, or does acts based thereon, or requires the
insured by virtue thereof to do some act or incur
some trouble or expense, the forfeiture is, as a
matter of law, waived; and it is now settled in
this court, after some difference of opinion, that
such a waiver need not be based upon any new
agreement or an estoppel." (See, also, *Webster v.
Phœnix Ins. Co.*, 36 Wis., 67; *Cannon v. Home Ins.
Co. of New York*, 53 Wis., 585; *Knickerbocker Life
Ins. Co. v. Norton*, 96 U. S., 234; *Silverberg v. Phenix
Ins. Co.*, 67 Cal., 36; *Marthinson v. North British &
Mercantile Ins. Co.*, 64 Mich., 372; *Eddy v. Mer-
chants, Manufacturers & Citizens Mutual Fire Ins.
Co.*, 72 Mich., 651; *German Ins. Co. v. Gibson*, 53
Ark., 494.)

The foregoing, among the many cases in har-
mony therewith, serve to illustrate the rule ap-
plicable to the present controversy. The demand
for successive proofs of loss after knowledge of
all the facts, upon grounds which are, to say the
least, highly technical, thus imposing upon the
insured the labor and expense incident to their
preparation, and the repeated peremptory calls
for arbitration, in accordance with the terms of
the policy relating to the measure of damage only,
cannot be construed otherwise than as a waiver
of the alleged forfeiture. And the rulings com-
plained of, so far as they relate to that branch of
the case, if erroneous, are manifestly not preju-
dicial to the plaintiff in error; nor are we unmind-
ful of the fact that Mr. Barber, on the return of
the first proof of loss, disavowed the admission

thereby of any liability on the part of the defend-
ant company or a waiver of any of its rights.  But
such a disavowal will not vary the legal effect of
his actions in behalf of the defendant.  In *Mar-
thinson v. North British & Mercantile Ins. Co., supra,*
a case in point, the managing officer of the com-
pany, on returning the proof of loss for correction,
used this language: "You will further take notice
that, in returning said papers and making the
objection thereto, and in all other matters herein,
this company waives none of its rights and de-
fenses under their said policy, but expressly re-
serves each and every one thereof unto itself." In
commenting upon the foregoing the court, by
Morse, J., say: "We do not think this general ref-
erence to other possible defenses was sufficient.
It devolved upon the defendant to specifically
state its defenses, or some of them, if it had any
other than those going to the defects in the
proof of loss.  If the company had frankly stated
that it refused to pay the alleged loss because of
the breaches of warranty and forfeiture by the
conditions of the policy, the knowledge of which it
then possessed, the assured would have, in all
probability, gone no further into cost and trouble
to perfect such proofs of loss, as its refusal to pay
on other grounds would have rendered it unneces-
sary.  This loose and general reservation of its
rights cannot be considered as an adequate notice
of the defenses insisted upon at the trial, and it
must be held that such defenses were waived by
its conduct."

The only remaining question relates to the
effect of the provision of the policy for determin-
ing, in case of loss, by arbitration of the amount
of damage.  It has been repeatedly held that a

14

stipulation for arbitration which does not provide for submitting the matters in dispute to a particular person or to a particular tribunal, but to one or more persons to be mutually chosen, is revocable by either party, and will not oust the jurisdiction of the courts having cognizance of the subject-matter of the controversy. (*Hostetter v. City of Pittsburgh*, 107 Pa. St., 419; *Commercial Union Assurance Co. of London v. Hocking*, 115 Pa. St., 407; *Donnell v. Lee*, 58 Mo. App., 288; *Rison v. Moon*, 22 S. E. Rep. [Va.], 165; *Canfield v. Watertown Fire Ins. Co.*, 55 Wis., 419; *German-American Ins. Co. v. Etherton*, 25 Neb., 505.) The last mentioned case furnishes an additional reason for the rejection of the defense based upon the refusal of the plaintiff below to arbitrate, viz., that the denial by the defendant company of its liability under the policy is a waiver of whatever right it may have had to insist upon the means therein provided for ascertaining the amount of the plaintiff's damage.

The judgment of the district court is right and must be

AFFIRMED.