E. E. CORSON v. ANCHOR MUTUAL FIRE INSURANCE COMPANY, Appellant.

| 113 | 641 |
| 119 | 308 |
| 113 | 641 |
| 125 | 269 |
| 113 | 641 |
| 128 | 580 |
| 113 | 641 |
| 139 | 374 |
| 113 | 641 |
| 143 | 576 |
| 144 | 231 |

**Evidence:** IMPERFECT COPY OF INSURANCE APPLICATION: *False representations of insured.* Under a statute providing that a copy of the application must be made a part of an insurance policy, a copy containing only two of twelve or more items in the application is not sufficient to satisfy the statute, and hence a policy containing such copy is not admissible for the purpose of showing the falsity of statements made in the application.

**Conditions of Policy:** WAIVER BY ADJUSTER: *Failure to keep books in a safe.* Where a policy provided that it should be void if the assured failed to keep a set of books in a fire proof safe, the failure to do so was waived by a statement of the adjuster that the assured would have to get duplicates for certain invoices in order to make required proof of loss, whereby assured was induced, at considerable expense and trouble, to procure such duplicate copies.

SAME: *Waives production of books on trial.* Where a policy provided that it should be void if assured failed to keep a certain set of books in a fire proof safe a waiver of such failure also operates to excuse the production of such books in an action on the policy.

STIPULATION AGAINST WAIVER. Where, as a preliminary to adjustment of loss under a policy, assured signed an agreement stipulating that nothing the adjuster might do, say, or write, should be construed, as waiving any defense of the company, as conditions or requirements of the policy, he was not thereby precluded from pleading a waiver by the adjuster of a clause in the policy, since the adjuster, having power to make such waiver could not deprive himself of that power by his own act.

*Appeal from Shelby District Court.*—HON. W. R. GREEN, Judge.

SATURDAY, APRIL 13, 1901.

ACTION on policy of fire insurance. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Sullivan & Sullivan* for appellant.

*Byers & Lockwood* for appellee.

McCLAIN, J.—Appellant relies principally on two defenses: First, misrepresentations in the application as to the title of the property, its value, and the amount of incumbrance thereon; and, second, breach of a clause incorporated in the policy known as the "Iron Safe Clause." The first of these questions resolves itself into an inquiry as to whether the application was incorporated into or attached to the policy as required in Code section 1741, in such way that misrepresentations therein could be relied upon by appellant to defeat the policy; and the sufficiency of the second defense turns on the question of waiver.

I. While there was an apparent pretense of setting out a copy of the application on the back of the policy, as required by the statute, it appears that what was there set out was so entirely defective and incomplete that the court held it to be not in compliance with the requirements of the statute, and therefore refused to allow the appellant to prove the falsity of statements made in the application. That is to say, while there was an application duly made out and containing these statements, which application was before the trial court and before the jury, the court ruled that the copy of this application set out on the back of the policy was so inaccurate and so defective as a copy that the statute requiring the company to attach to the policy a copy of the application had not been complied with; and the court, there-

fore, under the direction of the statute, held that the company was precluded from proving the falsity of the representations in the application as a defense to the action on the policy. A comparison between the original application and the copy as they appear in the record convinces us that the ruling of the court was correct. As a matter of fact, the purported copy contains only two out of perhaps a dozen of the items or memoranda written into the original application. This was no copy at all, and the statute was not complied with. Any defense based on statements in the original application therefore necessarily fails.

II. Attached to the policy as a printed slip was a clause denominated the "Iron Safe Clause," by which the insured agreed to keep a set of books showing a complete record of the business transacted, including all purchases and sales, both for cash and credit, together with the last two inventories of said business, and to keep such books and inventories securely locked in a fire-proof safe at night, etc., and covenanted to produce such books and inventories in case of loss; otherwise, the policy should be deemed null and void, and no action should be maintained thereon. It is conceded that the stipulations of this clause were not complied with by the insured, and the court so held; but the plaintiff contended that the breach of this clause had been waived, and that was the question presented to the jury. However, before discussing the question of waiver, it is proper to notice the claim of appellant that production of the books called for by the "iron safe clause" was demanded at various stages of the proceeding, and that this demand was not complied with, and that therefore the insured could not recover. Although appellant attempts to make out of this a different question than that involved in a breach of the clause by failure to keep the books required, and in the manner required, we can see no difference between the two questions. If the subsequent acts of the company relied on as a waiver

of the breach of the clause did constitute a waiver,
it extended to the inability to produce the books
required, and the failure to prove the loss by means of such
books, as well as the breach involved in the failure to keep
the books in the first place. With reference to the objection
that the book kept by the insured in which entry of credit
sales was made, and his bank book showing cash deposits,
both of which were introduced by plaintiff in connection
with his own testimony, were not such books as were re-
quired by the "iron safe clause," it is sufficient to say that
they were not relied upon as constituting a compliance with
that clause, but were used only as a means of refreshing the
witness' recollection as to the extent of his cash and credit
sales, and were admissible for that purpose, regardless of
whether they were such as were contempdated by the iron
safe clause or not, if it should be found, as contended, that
the breach of said clause was waived. The important ques-
tion, therefore, with reference to the iron safe clause, is not
whether it was valid, and whether there was such breach
thereof as to defeat recovery under the policy, but whether,
conceding its validity, and the breach, there was a waiver
of forfeiture of the policy on that account.
4    The waiver relied upon consisted of acts
and conversations of the adjuster, represent-
ing the appellant, with full knowledge on his part
of the breach of this clause and of the consequent
forfeiture of the policy, by which the insured was encour-
aged, induced, and required, at considerable expense and
trouble, to procure copies of his invoices which had been de-
stroyed in the fire, for the purpose of making out the proofs
of loss required under the policy, and the perfecting and sub-
mitting of these proofs of loss to the company. In *Fitch-
patrick v. Insurance Co.,* 53 Iowa, 335, it is said: "A
party to a contract, having the right to declare it forfeited,
must exercise that right when called upon to act under the
contract. He cannot recognize the contract as binding, and
afterwards insist upon the forfeiture." It is true that in

that case it was held that the company did not, by requiring proofs in accordance with the terms of the policy, waive a forfeiture resulting from breach of stipulations in the contract; but in the case of *Hollis v. Insurance Co.*, 65 Iowa, 454, the *Fitchpatrick Case* is explained as based on the necessity of further proofs to enable the company to determine whether it was liable under its policy, and it was held that, although mere silence and failure to make objection after knowledge of the forfeiture might not be a waiver (as to which see *Gibson Electric Co. v. Liverpool & London & Globe Ins. Co.*, 159 N. Y. 418 (54 N. E. Rep. 23), yet, "if with knowledge of the circumstances, it continued to treat the contract as of binding force, and induced plaintiff to act in that belief, the rule holding that it thereby waived the forfeiture is a very just one." Again, in *Antes v. Assurance Co.*, 84 Iowa, 355, this language is used: "Where a company, with full knowledge of the facts out of which the forfeiture of the policy arose, by its acts recognized the policy as a valid and subsisting contract, and induced the plaintiff to act in that belief and to incur trouble and expense, such action would be a waiver of the conditions under which the forfeiture arose." It is not necessary, in order to constitute a waiver, that the facts shall be such as would support a plea of estoppel. Estoppels are not favored in the law. Neither are forfeitures. A waiver such as we are now considering is in effect an election not to take advantage of a technical defense in the nature of a forfeiture, and should be looked upon with liberality rather than with strictness. *Titus v. Insurance Co.*, 81 N. Y. 410, 419. In the case before us it appears that the agent of the company sent to adjust the loss, after being duly advised as to the kind of books which the insured had kept, and well knowing that they were not in compliance with the requirements of the "iron safe clause," told the insured that he would have to get duplicate invoices of the goods purchased by him—the originals having been destroyed in the fire—and that the insured employed an attorney, and at considerable trouble and

expense secured from those who had sold him goods duplicates of these invoices, copies of which were then made, and attached to the proofs of loss and sent to the company. That this conduct on the part of the adjuster amounted to a waiver of the breach of the "iron safe clause," already known to the adjuster, is well settled by the decisions, not only of this court, but of the courts of other states. *Brown v. Insurance Co.,* 74 Iowa, 428; *Hollis v. Insurance Co.,* 65 Iowa, 454; *Dick v. Insurance Co.,* 92 Wis. 46 (65 N. W. Rep. 742); *Marthinson v. Insurance Co.,* 64 Mich. 372 (31 N. W. Rep. 291); *Titus v. Insurance Co.,* 81 N. Y. 410; *Insurance Co. v. Kennedy,* 47 Neb. 138 (66 N. W. Rep. 278).

Appellant contends, however, that by the signing of what is called a "nonwaiver agreement" the insured cut himself off from relying on these acts of the adjuster as constituting a waiver of the forfeiture. It appears that the adjuster, after having acquired knowledge of how the books had been kept, insisted that before he would proceed with the adjustment of the loss the insured should sign this agreement, by which it was stipulated that "nothing said adjuster may do or say or write shall in any way be construed as waiving any of the rights or defenses of said company, or any conditions or requirements of said policy as to proofs of loss or otherwise." With reference to the forfeiture in question, it seems to us that this agreement was wholly immaterial. The adjuster must be presumed to have had the power to waive a forfeiture. *Brown v. Insurance Co.,* 74 Iowa, 428; *Ruthven v. Insurance Co.,* 102 Iowa, 550, 560; *Brock v. Insurance Co.,* 106 Iowa, 30. He did proceed to adjust the loss, and required the insured to furnish proofs, including the procurement of the duplicate invoices, notwithstanding his knowledge of the facts amounting to a forfeiture. The nonwaiver clause was in itself a part of the adjustment. It had nothing to do with the fact of forfeiture, and was entered into with knowledge of that fact. The

adjuster could not by his own stipulation deprive himself of the power to waive this forfeiture; nor could he, for that matter, deprive himself of the power to waive his own stipulation for nonwaiver.   It is well settled that even the stipulations of a policy to the effect that they shall not be waived except in writing may themselves be waived by an officer or agent having authority.   *Viele v. Insurance Co.,* 26 Iowa, 9, 59.   It seems to us, therefore, that the non-waiver agreement did not destroy the effect of the waiver which in the absence of such agreement would have arisen out of the acts and conduct of the adjuster.   In this connection it may be suggested, also, that the adjuster, writing to the insured in acknowledgment of receipt of papers purporting to be proof of loss, made objections thereto not involving any reference to the forfeiture on account of the "iron safe clause," concluding his letter with this sentence: "This company neither admits nor denies any liability under its policy."   That such a general saving clause does not affect the question of waiver, see *Marthinson v. Insurance Co., supra,* and *Insurance Co. v. Kennedy, supra.*—AFFIRMED.