RUNDELL & HOUGH v. ANCHOR FIRE INSURANCE COMPANY, Appellant.

**Insurance:** WAIVER OF "IRON SAFE" CLAUSE: EVIDENCE. To constitute a waiver on the part of the insurance company of a condition in a policy precedent to recovery thereon, there must be some conduct on the part of the company which will lead the assured to believe that strict compliance with the contract will

| | |
|---|---|
| 128 | 575 |
| 136 | 467 |
| 128 | 575 |
| 137 | 189 |
| 128 | 575 |
| f143 | 575 |
| 143 | 576 |

not be insisted upon. Evidence reviewed and held sufficient to warrant a finding that the insurance company waived the provisions of the "iron safe" clause in its policy.

*Appeal from Wapello District Court.*— HON. M. A. ROBERTS, Judge.

THURSDAY, OCTOBER 19, 1905.

SUIT on a fire insurance policy. Trial to a jury, and verdict and judgment for the plaintiffs. The defendant appeals.— *Affirmed.*

*Sullivan & Sullivan,* for appellant.

*McElroy & McElroy* and *McNett & Tisdale,* for appellee.

SHERWIN, C. J.— The policy in suit contained a stipulation known as the iron-safe clause, which, in the instant case, is as follows:

The assured under this policy hereby covenants and agrees to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last two inventories of said business, which shall be taken annually, and further covenants and agrees to keep such books and inventories securely locked in a fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or some secure place not exposed to a fire which would destroy the house where said business is carried on; and in case of loss, the assured agrees and covenants to produce such books and inventories, and in event of failure to produce the same, this policy shall be null and void, and no suit or action at law shall be maintained thereon for any such loss.

There was a breach of this condition of the policy, and

the defense is based thereon.  The trial court instructed
that the failure to comply with the provision of the policy as
to keeping books and inventories and keeping the same in a
safe place would not defeat the right of recovery, but that
the · provision requiring the production of such books and
inventories in case of a loss made it incumbent on the plain-
tiffs to reasonably and substantially comply therewith when
called upon to do so, and that a failure to produce such books
and inventories would defeat recovery, unless a waiver of
the breach of the condition was shown.

As we understand the argument on rehearing, the ap-
pellant does not now contend that the instruction is erroneous,
though on the original submission such was in its contention.
The appellees have not appealed, and, of course, cannot be
heard to complain thereof, and this narrows the controversy
to the question of waiver alone.   On this question, the jury
was instructed that, in order to establish the waiver, plain-
tiffs must prove that defendant, with full knowledge of the
inability of plaintiffs to comply with the stipulation of the
policy requiring them to produce the books and inventories,
" neglected to declare its intention of insisting on the for-
feiture, but by its acts recognized and treated the policy as
a valid and subsisting contract between it and the plaintiffs,
and induced plaintiffs to act in that belief, and that plaintiffs
thereupon did in fact incur trouble and expense."   The
statement that if the defendant " neglected to declare its in-
tention," etc., was not a correct statement of the law, be-.
cause mere neglect to insist upon a forfeiture would not alone
constitute a waiver.   *Ervay v. Fire Ass'n,* 119 Iowa, 304;
*Keeman v. Missouri State Mut. Ins. Co.,* 12 Iowa, 126.
To constitute a waiver, there must be some affirmative act on
the part of the insurer, and it must be conduct which induces
the insured to " rest on the well-founded belief that strict
performance of a condition will not be insisted upon."
*Lake v. Farmers' Ins. Co.,* 110 Iowa, 473.   But, when such
conduct is shown, the insurer cannot in good faith set up

the breach of the condition as a bar to recovery. See same case.

Mr. Kirkham, the secretary and general adjuster of the appellant, went to Ottumwa to investigate and adjust the loss. He went to the residences of the plaintiffs, and made inquiries of Mrs. Rundell and Mrs. Hough as to the whereabouts of their respective husbands. They were not within reach, and he was so informed. He then inquired of Mrs. Rundell as to the time of the fire, by whom it was discovered, and her husband's first knowledge thereof, which of the two plaintiffs was in the store last the night of the fire, and the time that Mr. Rundell reached home. He also asked the amount of money that Mr. Hough had in the store at the time of the fire, and about the books, accounts, invoices and safe. He was told by Mrs. Rundell that there was no safe, that the books and accounts were burned, and that there was an invoice, but the date thereof was not known to her. Mrs. Rundell also described the books kept by her husband. Mr. Kirkham then told her to tell her husband to send in proofs of loss, and she did so, tell him on the same day. In answer to his inquiries on the same day, Mr. Kirkham was also told by Mrs. Hough that there was no safe and that the papers were burned, and he then told her that "they would have to send in their proofs of loss," and that "he didn't think there would be any trouble about insurance, because he had been talking to several, and they spoke well of Mr. Rundell."

Two days after these conversations Mr. Kirkham returned to Ottumwa. He again called at Mr. Hough's residence, asked for him, and, on being told by Mrs. Hough that he had not returned, told her to tell Mr. Hough that they "would have to send in their proofs of loss." Under the instruction of the trial court the breach of the condition consisted in not being able to produce the books and inventories as stipulated. This being true, if the plaintiffs had themselves told Mr. Kirkham that the books and inventories

were destroyed by the fire, so that they could not produce them, there can be no question that the defendant would have had full and explicit information on the one vital question, and, if after the lapse of sufficient time for further investigation, it had waived the condition, it could not thereafter say that the waiver was without full knowledge of the breach of the contract, and not binding.

If, therefore, the statements of the wives should be treated as if made by the plaintiffs, the same result would follow, because of the second conversation with Mrs. Hough, in which no reservation whatever was made by Mr. Kirkham. We know of no authority holding that the knowledge on which a waiver is based must come from any particular person. It is the knowledge itself which is essential, and not its source. It may be true that Kirkham, in conference with the women, was not bound to assume that they had full information of the facts, or that they were speaking by authority of their husbands, and yet, if their information was correct, and they did in fact impart to him the knowledge that the books and inventories were burned and could not be produced, he was then in possession of all the knowledge necessary on the vital question, and if he then or afterwards chose to act thereon, the defendant cannot complain of the source of such knowledge.

The appellant contends, however, that the plaintiffs were bound to send in their proofs of loss, and that Kirkham did not therefore induce them to incur any expense or trouble which they need not otherwise have incurred. The fallacy of this argument is apparent, when we consider the fact that the plaintiffs knew, as well as the defendant the condition of the contract, and that they could not recover thereon because of the loss of their books and inventories, and that such being the case they need not have incurred the expense of sending proofs of loss. Hence, if they sent them in response to Kirkham's request, and by so doing incurred expense or trouble, all of which the record showed they did,

they are within the principle of the cases in which it has been held that similar acts constituted a waiver of the conditions of the policy. *Hollis v. State Ins. Co.,* 65 Iowa, 454; *Brown v. State Ins. Co.,* 74 Iowa, 428; *Corson v. Mut. Fire Ins. Co.,* 113 Iowa, 641; *Lake v. Ins. Co.,* 110 Iowa, 473; *Hudson v. N. P. Ry. Co.,* 92 Iowa, 231; Ostrander on Fire Insurance (2d Ed.), section 225; May on Insurance (4th Ed.), section 504. This principle is well established by our own cases, and is not in conflict with the rules laid down in *Fitchpatrick v. Ins. Co.,* 53 Iowa, 335, and *Antes v. West. Assurance Co.,* 84 Iowa, 355.

The question of waiver was, therefore, properly submitted to the jury, and the judgment is *affirmed.*