SHEEREN v. GULF INS. CO. OF DALLAS,
TEX., et al.

No. 16579.

Court of Appeal of Louisiana.   Orleans.

May 17, 1937.

Jas. E. Courtin, of New Orleans, for appellant.

Gordon Boswell, of New Orleans, for appellee.

Hugh M. Wilkinson, A. Miles Coe, and Harry Nowalsky, all of New Orleans, and David L. Herman, of New Orleans, amici curiæ.

JANVIER, Judge.

Plaintiff, Margaret Sheeren, an emancipated minor, while riding as a guest passenger in an automobile owned by Dr. David F. Wexler and driven by one Merrill Mattel under direction of Wexler, received physical injuries as the result of a collision between that automobile and a motortruck which was going in the opposite direction. Charging that the proximate cause of the accident was the negligence of Mattel and that Wexler is liable for the resulting damage, Miss Sheeren brings this suit against Wexler and also against Gulf Insurance Company of Dallas, Tex., alleging that company to be the liability insurance carrier of Wexler, and that, as such, it may be sued directly because of the provisions of Act No. 55 of 1930.

Wexler made no defense and, accordingly, judgment by default was rendered against him, the amount thereof being $3,500. Wexler did not appeal.

The insurance company, however, made answer denying that the accident had been caused by the negligence of Mattel and, in the alternative, charging that plaintiff had assumed the risk of Mattel's negligence, and also averring contributory negligence on the part of plaintiff. But especially, the insurance company, admitting the issuance of a policy to Wexler, relied upon the contention that it was not liable in any event because of the fact that the automobile of Wexler, which was involved in the accident, was not the one which had been specifically made the subject of insurance in the policy referred to.

The judge a quo, without finding it necessary to consider the other contentions, sustained the defense that the policy did not afford protection to Wexler against liability growing out of the use of the particular automobile which had been involved in the accident and that no policy covering that automobile had been issued and no liability or responsibility had been assumed in connection with the ownership or maintenance of that car. From this judgment plaintiff has appealed.

It is conceded that the policy of insurance contained, among its terms, the following:

"Gulf Insurance Company * * * does hereby insure Dr. David F. Wexler * * * against loss * * * resulting from damage (to persons or property) by reason of the ownership or maintenance of the automobile described in statement '11,' namely, a '1931 Chevrolet sedan, serial number 3AE84,005, motor number 2,855,228.' "

And it is also conceded that the automobile referred to in the policy had been sold by Wexler and a new one (the one involved in the accident) had been purchased long prior to the day on which the accident occurred. Plaintiff maintains that, in spite of the fact that the automobile mentioned in the policy had been sold, there is liability in the insurer for either of two reasons:

First. That though the policy referred to the automobile by make, number, model, and otherwise, nevertheless the true purpose of the parties was the issuance of insurance protection to Dr. Wexler personally, regardless of the automobile involved, and that, therefore, when he sold the first car and acquired the second, the coverage of the policy automatically transferred from the one to the other; and,

Second. That the insurer, by reason of its retention of the premium after discovery by it of the change in automobiles and by reason of its having negotiated with Dr. Wexler and on his behalf, after discovery of the change in cars, had estopped itself to deny the coverage of the policy.

The insurer concerns itself but little with the first contention, relying upon the policy provision affording protection against loss or damage resulting by reason of the ownership or maintenance of the automobile described and identified, and in connection with the second contention, points to the fact that, before it took any action looking to the defense or adjustment of the claim, it reserved its rights to deny liability under the policy and required that Wexler execute a document known as a "nonwaiver agreement," under which the insurer, without assuming responsibility, undertook to investigate the accident and to negotiate settlement. That nonwaiver agreement reads as follows;

"Whereas, Dr. David Wexler, hereinafter called the Assured, has reported to the Gulf Insurance Company, hereinafter called the Company, an accident occurring on or about June 14, 1935 under Policy No. 560225 RC4953, and,

"Whereas, the Company has not accepted liability in such accident because the automobile that was insured under the policy was not the automobile that was involved in the accident;

"Whereas, the assured contends that the Company is liable to him under the policy, and,

"Whereas, both parties desire to cooperate to reduce to a minimum the final loss arising out of such accident, and to postpone the determination of their respective rights and liability under the policy until the amount. of the Assured's liability for damages arising out of such accident has been definitely determined:

"Now therefore, in consideration of the premises and the mutual promises hereinafter made, it is hereby agreed as follows:

"That it is the intent of the parties hereto to preserve in statu quo as of this date all their respective rights under the above numbered policy; that the Assured does not surrender or waive any of his rights under the policy; that the Company is to undertake investigation of said accident, negotiate settlement of claims arising therefrom, and defend any suit brought against the Assured, as a result of said accident, subject to all agreements, conditions and limitations of said policy, and also, subject to the further definite express understanding that in so doing, the Company does not assume liability, does not waive the right to deny liability, and does not waive its rights to rely upon the policy provisions and does not agree to pay any settlement that may be negotiated or any judgment that may be rendered against the Assured."

That the agreement was made is admitted, but it is contended that, subsequent to its execution, the conduct of the insurer constituted a waiver of its rights thereunder; in other words, that it waived the nonwaiver agreement. The act which, according to plaintiff, constituted a waiver, was the alleged delay of the insurer in finally and definitely announcing whether or not it would assume responsibility under the policy.

We first consider the contention of plaintiff that a liability insurance policy, such as the one involved here, does not terminate when the automobile described therein ceases to remain under the ownership or maintenance of the insured, and that, if the said insured acquires another automobile instead, then the coverage of the original policy automatically transfers to the new car.

The proposition is so astounding that we have diligently searched the textwriters and the cases cited to ascertain on just what foundation the argument is based and we conclude that it results from the improper interpretation of certain language of the Supreme Court of Washington in Reimers v. International Indemnity Co., 143 Wash. 193, 254 P. 852, and from a misunderstanding of the discussions indulged in by various text-writers concerning the difference between the coverage afforded by policies of fire or theft insurance and the protection afforded by a liability policy. In the Reimers Case the court stated that it was not the truck which was insured, but that "respondent only was insured against liability which might be incurred by him through the operation of his truck," and it is this language which is pointed to as authority for the view that the coverage of a liability policy is personal and is in no way based on or identified with a particular vehicle. But the decision itself is complete authority for the view that that result was not reached, for the court took great pains to say that, in truth and in fact, the truck which was involved in the accident—although certain parts had been changed—was to all intents and purposes the same truck which had been made the subject of the insurance. The court discussed the fact that a vehicle, as a result of use and repair, might be changed part by part, and said that nevertheless within the contemplation of such a policy it would remain the same vehicle. Note the following:

"The identification of respondent's truck was complete."

The identity would have made no difference if plaintiff's theory is correct.

Another case cited by plaintiff, Claverie v. American Casualty Company (C.C.A.) 76 F.(2d) 570, 571, is, in the main, authority for the view that such coverage is not personal and affords protection to the owner against accidents resulting from the use of the particular vehicle only which is made the subject of insurance. It is true

that in that case the ultimate conclusion was that the insurer had waived the policy condition and had thereby consented to the change in vehicles. But the court very plainly said that, except for that waiver, there could not have been a decision against the insurer on any other ground for the reason that to hold it liable for accidents resulting from the use or ·maintenance of a vehicle which it had not insured "would be to create an obligation without giving any consideration therefor," and the court said that "the result would be the same whether the' policy had previously expired or the occurrence did not come within its terms."

We ourselves not long ago considered a case in which one motorcycle had been substituted for another which had been specifically referred to in and identified with a liability insurance policy and in which it was contended that "equitable considerations compel the reformation of the contract so as to include the new motorcycle upon the ground that the intention of the parties was that it should be covered by the policy." Rejecting this argument, we said:

"The case before us does not involve the failure to properly describe the vehicle, or a mistake in the year of its manufacture, or motor number, but one in which a totally different motorcycle was covered. The fact that the one that caused the injury was subsequently brought under the protection of the policy has no bearing, since we must interpret ·the policy as we find it, and, therefore, as covering a different motor vehicle altogether from that which caused the injury in this case. We cannot say, under a fair interpretation of the policy, that its coverage should be extended so as to protect the automobile which did the damage in this case."

Mr. Huddy, Mr. Berry, and Mr. Blashfield, in their respective treaties on the law of automobiles, in discussing the protection afforded by liability policies, all agree that the identification need not be so perfect and complete as it must be where the protection is against fire or theft, because, in the latter cases, it is the thing itself which is insured, whereas in the former it is the liability of the owner, but all that they say is that where the policy is one against liability all that is ̓necessary is that the identity of the vehicle be established and that, if this is done, then inaccuracies in description are unimportant. Note the following in Huddy's Cyclopedia of Automobile Law, vol. 13-14, p. 393:

"Sec. 306. Risks covered.

"An automobile liability insurance policy does not cover property loss on the part of the insured owner, as in fire or theft policies. 'Legal liability' for injury to persons or property of others resulting from the 'ownership, maintenance or use' of the car is the coverage of this policy. That is the risk or hazard which is assumed by the insurance carrier, and for which the 'assured' is indemnified."

"(Note the reference to 'the car')

"Sec. 307. Automobiles covered.

"Since, under this form of insurance, it is the owner who is insured against liability resulting from the operation of a particular vehicle, and not the vehicle itself, the description of the vehicle is not so material ·as it would be in the case. of a fire or theft policy covering the vehicle. If identification of the vehicle ·is complete, a mistake in the description of the vehicle, as, for instance, in its year or number, is not fatal."

We consider significant the words "if identification of the vehicle is complete."

From the above it is quite obvious that Mr. Huddy did not intend ṭo state that a policy of liability insurance is not identified with a particular vehicle. On page 394 of the same volume he says:

"A liability policy is in effect just so long as the assured remains the owner of the car * * *."

None of the text-writers hold that a policy identified with a particular vehicle · should be held to cover another vehicle substituted for the first, and we feel that such a holding would be legally impossible in the absence of a waiver estopping the insurer to object, or of an agreement permitting the substitution. It is well known that different automobiles are insured against liability at different rates. The rate on a large, powerful car is known to be higher than the rate on a small car. What would be the result if a small car was traded in on a large one? Would it be possible to apply the rule contended for by plaintiff? If so, the insurer would find itself assuming a much greater liability than it had contracted to assume. Suppose that an owner possessed two cars, each insured with a different insurer, and simultaneously traded both, and acquired two new ones? Which policy should at-

tach to which new car? Who can tell? These and many other illustrations serve to show the impracticability as well as the legal 'impossibility of applying plaintiff's theory to facts such as these.

We next approach the question presented by plaintiff's plea that, because it attempted to negotiate for settlement of the claim, the insurer has estopped itself to disclaim liability under the policy. In considering this question, we must bear in mind two things: One a fact, that a nonwaiver agreement was first obtained; the other a legal principle, that no estoppel results unless harm or prejudice has come to the party relying on the estoppel, or unless his position has been changed to his disadvantage.

It appears that within a very short time after the discovery of the change in automobiles the insurer contended to Wexler that it was free from liability and that Wexler at that time contended that he had given notice of the' change in automobiles and that the insurer had assented to the continuance of the insurance protection on the new car. Of course, had that been true, there would have been liability under the policy, and the insurer, if, under the facts of the accident, there had been liability in Wexler to plaintiff, would have been forced to assume responsibility therefor, and, since this dispute arose over a question of fact—whether the notice of the change had been given—the parties agreed that the insurer would not definitely disclaim liability, but in the interests of both Wexler and itself would attempt to effect a settlement with the injured person. It is well also to remember that Wexler contended, as he and plaintiff even now contend, that regardless of notice the policy covered the new car, and, though the insurer felt certain of its position, it realized that the courts might adopt a different view. Therefore, since, for either of the two reasons, it might have been possible for the courts to hold the insurer liable, it did not feel that in fairness it should absolutely refuse liability and, on the contrary, agreed, for and on behalf of Wexler, to negotiate for the settlement and to attempt to bring the matter to a satisfactory conclusion, provided Wexler would agree that the insurer, in doing so, should not waive its rights to later contend that it was not liable because of 'the fact that the automobile involved was not the one covered by the policy. We see no reason why it should not be permitted to do this. Neither Wexler nor the plaintiff has in any way been harmed thereby. Wexler could have refused to sign the nonwaiver agreement and the insurer would then have been required to state definitely whether it assumed responsibility under the policy. In that nonwaiver agreement lies the complete distinction between this case and that of Claverie v. American Casualty Company, supra, so completely relied upon by plaintiff as authority for her contention that the right to defend on the ground that the automobile involved was not covered by the policy was waived by the subsequent conduct of the insurer. In the Claverie Case the ultimate holding of the United States Circuit Court of Appeals was that, because the insured had defended the suit after ascertaining that there had been a change in vehicles, it had estopped itself to rely on the defense that the motorcycle described and identified in the policy was not the one involved in the accident. But we note several important distinguishing facts. There the insurer, after the accident, was notified thereof and was advised that the motorcycle involved was not the one which was identified by number, make, et cetera, in the policy. Nevertheless, the insurer, upon receipt of this information—and we now quote from the decision—"indorsed the new motor numbers upon the policy, and retained the premium; and, without any notice to the insured that liability under the policy was questioned or denied * * * undertook the defense of the action brought by the injured man precisely as it would have done if its liability had been beyond dispute." We naturally focus our attention on the words "without any notice to the insured." The court also said that there the insurer had assumed control of and had conducted the defense of the action against the insured "without disputing its liability and giving notice to the insured of a reservation of its rights." Likewise, in General Tire Company v. Standard Accident Insurance Company, 65 F.(2d) 237, 240, also cited by appellant, the United States Circuit Court of Appeals based its conclusion that there had been a waiver of the right to deny the coverage of the policy on the fact that the insurer had assumed the defense of the suit "without reservation," stating:

"Where, as here, the insurer, without reservation and with knowledge actual or presumed, assumes exclusive control of the defense of claims against the insured, it

cannot thereafter withdraw and deny liability under the policy."

Of course, had the insurer here undertaken to defend the suit, or possibly even negotiated for settlement, without reserving its right to deny liability, it might thereby have estopped itself. But we cannot see how, with a full reservation of that right, its action can be pointed to as creating an estoppel.

█ The retention by the insurer of the premium after it discovered the change in automobiles is also said to have resulted in the creation of an estoppel. There are many authorities which hold that, where it is contended that a policy never attached to a particular risk, the retention of the premium after discovery of the facts may constitute a waiver of the right to deny the coverage. There is no necessity that we quote from the authorities because it is conceded that this is true and the rule is well established, but the distinction here lies in the fact that, though the insurer felt that it was not liable, it agreed to allow that question, as between it and the policyholder, to remain in abeyance until the determination of the primary question of liability, vel non, to the third party. That question—whether the insurer was liable—the parties agreed to leave for future determination. The effect of such a course of conduct is set forth in General Tire Company v. Standard General Accident Company, supra, in which the court said:

"* *, * if the insurer undertakes * * * control with a timely reservation that it will disclaim liability if certain facts, not then definitely known, are ultimately established, it may, upon timely notice, escape the charge of waiver and estoppel."

Obviously, therefore, it was proper that the insurer should retain the premium because, in the event that it should be determined in the future that the policy did cover the particular automobile involved, then the insurer would be entitled to permanently retain the premium. If, on the other hand, the question should be settled adversely to Wexler, and it should be held that the automobile was not covered by the policy, then the premium, of course, should have been, and in fact was, returned to Wexler. Therefore, until that question could be determined, there was no necessity that the premium be returned. In fact, had the premium been tendered to Wexler and accepted by him, that fact in itself might have been considered as acquiescence by him in the contention that the policy had never attached to the second automobile.

█ But plaintiff maintains that, in spite of the fact that a nonwaiver agreement was executed, liability in the insurer has resulted from its subsequent action, or, rather, nonaction, contending that this results from the fact that, even after the nonwaiver agreement was entered into, the insurer took so much time in negotiation and in definitely and finally announcing that it refused to assume liability that that delay should be considered as constituting a waiver of the nonwaiver agreement, and plaintiff cites authorities which hold that a nonwaiver agreement may be waived by subsequent conduct. Pennsylvania Fire Insurance Company v. Draper, 187 Ala. 103, 65 So. 923; Pennsylvania Fire Insurance Company v. Hughes (C.C.A.) 108 F. 497; Corson v. Anchor Mutual Fire Insurance Company, 113 Iowa, 641, 85 N.W. 806.

We have no doubt that many more authorities to the same effect may be found, for it is obvious that the mere obtaining of a nonwaiver agreement does not give to an insurer the right to do anything it may wish to the prejudice of the rights of the insured and thereafter to continue to rely upon the nonwaiver agreement. But here there is nothing which the insured did which is relied upon as constituting a waiver of the nonwaiver agreement except its failure to effect a settlement or to definitely decline liability until suit was filed. We do not see that until that time there was any obligation on it to act or to decline liability. Where inaction is depended upon as creating an estoppel, then it must be shown that there was a duty to act. It seems clear, from the correspondence which is in the record, that it did all that it could to arrange a compromise and we are unable to see how any prejudice resulted to any one from those negotiations. Unable to effect a compromise, it did nothing more until the suit was filed and then definitely took the position that the policy had never attached to the particular car and that the contention of Wexler that he had given notice when the new automobile was acquired was not well founded and at that time it tendered the return of the premium. Nei-

ther the plaintiff nor the insured has, to any extent or degree, been prejudiced by the action of the insurer, and there is no estoppel unless there is prejudice. Farley v. Frost-Johnson Lumber Company, 133 La. 497, 63 So. 122, L.R.A.1915A, 200, Ann. Cas.1915C, 717; Maddox v. Robbert, 158 La. 394, 104 So. 183; West's Louisiana Digest, Estoppel, ⬅ 56, 58. If there was no coverage under the policy, then, whatever may have been the liability of Wexler resulting from this accident, he could not have secured indemnity from the insurer, and, consequently, there are no rights in the injured party which she may assert under Act No. 55 of 1930.

Lest the result reached in Rome v. London & Lancashire Indemnity Company (La.App.) 156 So. 64 (approved by the Supreme Court in 181 La. 630, 160 So. 121), be interpreted as establishing a rule, by reason of Act No. 55 of 1930, that there may be rights in an injured person to recover against the insurer of the tort-feasor greater than are the rights of the insured tort-feasor, let us say that all that was said in that case was that, where the facts show that the policy covered the particular risk, the personal immunity to suit of the tort-feasor does not protect the tort-feasor's insurer. We did not say and we could not say that, by reason of the statute, there is created in favor of an injured party a right to recover from the insurer under circumstances not covered by the policy. The insurer may always set up against the injured party the defenses which it may have set up against the insured. Here the insurer might well have said to the insured that the policy had never attached to the particular automobile, and, since it might have made that defense against a claim by Wexler for indemnity, it may make it against a claim by the injured party.

Counsel for plaintiff calls attention to the well-recognized rule that forfeitures are not favored in law and cites several cases which recognize this doctrine. For instance, in the syllabus in Manhattan Life Insurance Company v. Parker, 204 Ala. 313, 85 So. 298, 299, it is said that:

"Courts are always prompt to seize any circumstances that indicate an election to waive the forfeiture of a contract of insurance, or any agreement to do so, on which the party has relied and acted."

But it is not a forfeiture against plaintiff, nor against Wexler, which is here involved. On the contrary, the principle, if applicable in any way to the facts of this case, applies in favor of the insurer. Originally, no right under the policy existed in favor of plaintiff or of Wexler. The only right involved was the right of the insurer to point to the policy and to deny that it covered the particular car, and the only forfeiture involved would be a forfeiture by the insurer of its right to make that defense.

Counsel also declares that there is a vast difference between a policy which is void and one which is merely voidable, contending that, where a policy is merely voidable, definite action on the part of the insurer is required before it may be voided. But the question here is not whether a policy is void or merely voidable, but whether a particular risk is included in the policy in question, and there can be no doubt that, but for the action on the part of the insurer, there could have been no question whatever that the risk involved was not covered by the policy. Therefore, since it was not covered, no action to void the policy was required.

We conclude that there was no coverage under the policy and that there has been created no estoppel under which the insurer may be held liable.

There is no necessity that we discuss the additional defenses of assumption of risk and of contributory negligence.

It is ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed, and that plaintiff's suit as against Gulf Insurance Company of Dallas, Tex., be and it is dismissed, at her cost.

Affirmed.