I. MARSH et al., Appellees, v. FEDERAL SURETY COMPANY, Appellant.

**INSURANCE: Condition Subsequent—Avoidance.** The failure of the insured under a policy of insurance against loss by burglary to

comply with a provision of the policy to the effect that the insured shall keep books of account from which the actual amount of a loss may be determined, is no defense when it is affirmatively made to appear that such failure did not contribute to the loss.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

## MAY 15, 1923.

ACTION to recover on a burglary policy of insurance. The jury found for plaintiff in the amount of $450, and judgment was entered on the verdict. Defendant appeals.—*Affirmed.*

*Shull, Stilwill, Shull & Wadden* and *W. H. Caudill,* for appellant.

*Edward E. Baron,* for appellees.

ARTHUR, J.—The petition alleged that, on September 20, 1920, appellees purchased from appellant company a policy of burglary insurance, and that, while said policy was in force, about December 1, 1920, the business place of appellees in Sioux City, Iowa, was entered by burglars, and merchandise stolen in the amount of $839 (stating the items which were taken); that the burglary and loss of property was reported to appellant company, and payment was demanded under the terms of the policy of insurance.

The answer, after general denial, alleged an affirmative defense that appellees had not fulfilled certain provisions of the policy, in that they had not kept books of account from which appellant could accurately ascertain the actual loss and damage sustained by appellees, as provided by Section B of the policy, and further alleged that appellees had not given notice of the loss, as required in said Section B, and had not furnished proper proof of loss, as required in Paragraph 8 of said policy.

Appellees replied, denying affirmative defenses, and averred compliance with all provisions of the policy in question.

I. Appellees introduced evidence to show that they were conducting a cleaning and dyeing business, under the name of the Midwest Cleaners & Dyers, and also bought and sold cloth-

ing; that they conducted two classes of business,—that of clean-
ing and pressing clothes for customers, and buying and selling
on their own account secondhand clothing; that there was issued
to them by appellant, through King-Kamman Agency, the policy
of insurance sued on, in the amount of $1,000 on "stock of cloth-
ing owned by insured or held in trust for which they may be
liable;" that, on December 2, 1921, the store of appellees was
broken and entered, and certain articles of clothing stolen there-
from, of the value of $839; that the merchandise stolen belonged
to appellees; that report was made to appellant of the burglary
and theft of the merchandise; that the store had been entered
by breaking the back door; that, within two or three days, an
adjuster for defendant came and examined the premises, and
asked for the records of the business, and was advised by appel-
lees that the box containing the papers showing merchandise on
hand at the time of the burglary had been stolen at the time of
the burglary, and that they had no book; that the adjuster, on
the second visit, advised appellees that, if they could not show
any books and accounts from which could be accurately deter-
mined the actual amount of the loss, nothing would be paid on
the policy; that, when so advised, appellees secured such in-
formation as could be obtained from parties from whom mer-
chandise had been purchased and from other sources, and made
up an account in a book which was shown to the adjuster, and
which was offered in evidence on the trial of the case.

Appellees offered evidence to show breaking and entering of
the store, the articles of merchandise stolen, and the value
thereof.

Defendant called as witnesses Oakley H. Beyer, superintend-
ent of agencies for defendant, and F. W. Kamman, agent for
defendant, who negotiated the policy in suit. Beyer testified
to calling on plaintiffs at their store shortly after being informed
that the store had been burglarized; that plaintiffs showed him
the condition of the premises; that he asked them for their rec-
ords, and they told him they did not keep any records; that he
asked them, "How do you keep track of your sales?" that they
said that, on every Saturday night, they counted the suits that
they had, and if any suits were sold, the difference from the
number they had the Saturday before would be the number they

sold, and they knew how many they sold in that way, and that was the way they kept track of it. They said that they kept no records, other than counting the suits over every Saturday night; that later, he and Mr. Kamman visited the store, and plaintiffs produced a "little red book;" that he examined the book, and told plaintiffs that it was not accurate and definite, and that he could not properly determine the loss under the policy, and he declined payment. Kamman testified that plaintiffs showed him a book which they said contained the record of purchases and sales; that plaintiffs did not tell him about keeping other records; that they did not tell him anything about slips of paper that they kept in a tin box, and did not show him any such slips; that they showed him a panel of the door that was broken in; that they showed him where they kept the goods that were stolen; that plaintiffs did not tell him that they had any records that were stolen, nor that the tin box containing their records had been stolen; that, when he took the application for the policy, plaintiffs showed him a book of purchases and sales, but that he did not look it over; that he told them it was necessary to keep a record of the merchandise they had on hand, and they said they would keep such a record; that, on the day of the loss, he examined the store, and found evidences that the back door had been broken in, and found that one of the racks had garments taken from it; that plaintiffs informed him that 75 suits and 17 overcoats were stolen, and gave him the prices of same; and that he made a report of the loss to his company.

II. At the close of all the testimony, plaintiffs moved for a directed verdict, on the grounds that the undisputed evidence showed that the store was burglarized; that the policy of insurance sued on was in force at the time of the burglary; that the only defense interposed was the failure to keep books, as provided in the policy; that, though it be conceded, for the purpose of the motion, that no books or papers were kept, there was no allegation or proof that the failure to keep such books or papers or records contributed to or brought about the loss in question; and that the undisputed evidence, both on the part of the plaintiffs and the defendant, established that the failure to keep any books or records, if there were such failure, did not contribute to the loss.

The motion was, in effect, sustained by Instruction No. 6, as to the defense based on failure of plaintiffs to keep books, and was otherwise overruled, and the case was submitted to the jury. Instruction No. 6, given by the court to the jury, was as follows:

"The defendant, as a special defense, denies that plaintiff kept books of account from which defendant can or could actually determine the actual amount of loss and damage to have been sustained by plaintiff, as provided for by Section B of the policy sued upon. And as to this defense, you are instructed that, under the laws of Iowa, the same is not a defense to an action on this policy in this case, and the court withdraws this defense from your consideration, and you will not pay any attention to the same."

The statute referred to in the instruction is Code Section 1743, which reads:

"Any condition or stipulation in an application, policy or contract of insurance, making the policy void before the loss occurs, shall not prevent recovery thereon by the insured, if it shall be shown by the plaintiff that the failure to observe such provision or the violation thereof did not contribute to the loss."

III. Errors relied upon for reversal are:

(1) That the court erred in giving Instruction No. 6, withdrawing the defense therein mentioned from the consideration of the jury.

(2) That the court erred in giving Instruction No. 8, reading as follows:

"You will see that this is an action brought on the claim for burglary insurance; and you are instructed that, before the plaintiffs can recover in any amount, they must show by a preponderance of the evidence, as herein defined, that said premises covered by said insurance policy were broken into and burglarized."

(3) That the court erred in refusing to grant a new trial on the ground of the newly discovered evidence of one Edward C. Becker.

IV. The main defense was predicated on Section B of the policy, which reads:

"The company shall not be liable for damages unless books

and accounts are kept by the insured and the company can accurately determine the actual amount of loss or damage therefrom.''

The important question in this case is whether the trial court erred in giving Instruction No. 6, above quoted, withdrawing the defense based on Section B of the policy, above quoted, as being of no effect, because in violation of Code Section 1743, above quoted. It is urged by appellant that such statute does not render ineffective said Section B of the policy. In support of their contention, counsel for appellant cite cases from other jurisdictions, and *Sowers v. Mutual Fire Ins. Co.,* 113 Iowa 551; *Rundell & Hough v. Anchor Fire Ins. Co.,* 128 Iowa 575; *Henderson v. Standard Fire Ins. Co.,* 143 Iowa 572. In the *Sowers* case, the policy sued on contained an agreement requiring insured to keep a set of books and to preserve an inventory, to be produced in case of loss. On the trial, it was admitted that the insured had made no inventory of his stock of merchandise, and kept no books. In the opinion we state that:

''It is also practically conceded that these facts avoided the policy, unless defendant, through its agent, waived the warranty at the time the policy was issued.''

The provision of Code Section 1743, applied in the instant case, does not seem to have been pleaded or considered in the *Sowers* case. It seems to have been conceded by the plaintiff that his failure to keep books and to preserve an inventory prevented recovery on the policy unless such failure had been waived by the company through its agent. The decision of the case turned on the question of waiver. The provision of the statute was not insisted upon, and whether it prevented a defense based on failure to keep books and inventory was not passed upon in that case.

In *Rundell & Hough v. Anchor Fire Ins. Co.,* supra, the policy in suit contained a stipulation known as the ''iron-safe'' clause, and the defense was based on failure to comply with such provision. The trial court instructed that the failure to comply with the provisions in the policy as to keeping books and inventory and keeping the same in a safe place would not defeat the right of recovery, but that the provision requiring the production of such books and inventory in case of a loss made it incumbent

on the plaintiff to reasonably and substantially comply therewith when called upon to do so, and that a failure to produce such books and inventories would defeat recovery, unless a waiver of the breach of the condition were shown. We said:

"As we understand the argument on rehearing, the appellant does not now contend that the instruction is erroneous, * * * and this narrows the controversy to the question of waiver alone."

The evidence was reviewed, and was held sufficient to warrant finding that the insurance company waived the provision of the "iron-safe" clause in its policy.

In *Henderson v. Standard Fire Ins. Co.*, supra, the provision of Code Section 1743 above quoted was not considered in connection with the defense that the insured had not complied with the provision of the policy requiring the insured to keep a set of books showing a record of purchases and sales of merchandise, and to produce the same, with an inventory of the stock, in case of loss. The decision of the case turned on waiver of compliance with such provision of the policy.

V. It was clearly established by uncontradicted testimony that the failure to keep books or accounts, as provided in the policy, did not contribute to the loss or damages claimed by plaintiffs. In *Johnson v. Farmers' Ins. Co.*, 126 Iowa 565, we passed directly upon this provision of Code Section 1743, involved in this case, in which we said:

"As to the breach of the agreement to keep a set of books, and of the iron-safe clause, Section 1743 of the Code eliminated these matters, for there is neither pleading nor proof that they in any manner contributed to the loss."

This pronouncement in the *Johnson* case controls and is decisive of the case before us. The *Johnson* case is the only case in our court, so far as we are informed, prior to the case before us, in which an issue involving construction of this provision of Section 1743 has been squarely presented. We hold that the trial court did not err in giving said Instruction No. 6.

VI. There is no merit in appellant's complaint of Instruction No. 8. Said instruction, read with other instructions, fairly and properly presented to the jury all the essential elements of the case necessary to be established to entitle plaintiffs to recover.

VII. It was not error to overrule defendant's motion for a new trial, based on newly discovered evidence. The claimed newly discovered evidence was the testimony of one Edward C. Becker. Becker was a detective of the police department of Sioux City, and investigated the claimed burglary. The record discloses that defendant, through its agents, knew that investigation had been made by the police department. Defendant did not move for a continuance on the ground of the absence of Becker, or because Becker's testimony could not be secured. There was no showing made as to what Becker would testify to, and no offer of his testimony was made at the trial. We think that the showing of diligence was not sufficient.

We discover no error in the trial of the case. The judgment of the court below is—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.