## 10915

### BELUE v. UNITED COMMERCIAL TRAVELERS
### (113 S. E., 364—117 S. E., 591)

1. JUDGMENT—JUDGMENT OF UNITED STATES CICUIT COURT OF APPEALS REVERSING AND REMANDING HELD NOT RES JUDICATA IN ACTION IN STATE COURT AFTER DISCONTINUANCE.—In action by a beneficiary on a benefit certificate against an insurer, a judgment of the United States Circuit Court of Appeals reversing and remanding a judgment for plaintiff rendering in a United States District Court, whereupon plaintiff took an order of discontinuance, is not res judicata in an action on the same benefit certificate in a State Court.

2. INSURANCE—NO LIABILITY ON DEATH OF MEMBER IN ARREARS.—A benefit association held not liable on death of a member from an injury received when he was several months in arrears for dues and assessments, where its constitution and the certificate expressly provided from the right to any benefit or indemnity, and that on restoration to good standing the association should not be liable on account of any accident or injury received during the time of suspension.

3. INSURANCE—FORFEITURE FROM NONPAYMENT OF DUES NOT WAIVED.—A benefit association, by receiving dues from and reinstating a delinquent member then suffering from an injury which caused his

death, but which was unknown to the officer receiving the money, held not to have waived a condition of the contract exempting it from liability on account of injury received by a member while suspended for delinquency.

Before SEASE, J., Spartanburg.   Reversed with instructions.

Action by Mary Lucile Belue against the Order of the United Commercial Travelers of America.   Judgment for plaintiff and defendant appeals.

The motion for a directed verdict was made on the following grounds:

1.   That the verdict be directed for defendant upon its counterclaim for the sum of three hundred, eighty-seven and 75-100 dollars, with interest thereon from June 14, 1920, the said claim being clearly proven, and no evidence to the contrary.   That the verdict be directed in favor of defendant on the claims made by plaintiff, on the grounds:

2.   That the evidence shows conclusively that the deceased, J. T. Belue, was in arrears for several months of assessments and dues on April 21, 1917, when his father left his check covering the same upon the desk of the local Clerk, who issued a receipt therefor; and by reason of such delinquency in the payment of his dues and assessments as the same became due, had forfeited for himself and his beneficiary all right to benefits or indemnities under his certificate for injuries caused by accident occurring during said period of delinquency, the constitution and laws of the defendant order so providing, the evidence showing clearly that if the deceased suffered any accidental injury at all within the meaning of said constitution, the same was suffered during such period of delinquency, and there being no evidence of a waiver of the forfeiture resulting from such delinquency.   It is submitted that under the terms of the defendant's constitution and laws, which were binding upon the deceased, he forfeited all rights of any benefits or indemnities when he failed to pay when, and as they became

due, all dues and assessments, and for any accident occurring during the period of delinquency there could be no liability, in the absence of waiver, and there is no evidence of such here; and it being further submitted that even if the payment made on April 21, 1917, by J. P. Belue was sufficient to reinstate deceased, it could only serve to restore his right to benefits in so far as accidents happening thereafter were concerned, and not as to accidents happening prior thereon.

3.   Upon the further ground that the evidence fails to show that the deceased died as the direct and sole result of a violent injury, accidentally inflicted—there being no evidence of an accident causing the erysipelas.

4.   Upon the further ground that the matters involved in this action were adjudicated adversely to the plaintiff, in an action between the same parties, by the Circuit Court of Appeals of the United States for the Fourth Circuit, by which it was adjudicated that, under the same facts as appear in this trial, there was no liability, no waiver, and no ground of recovery.

5.   Further, that this action was not begun within six months from the rejection of plaintiff's claim, as required by the constitution and laws of defendant, and therefore the plaintiff is barred.

6.   Because, under the decisions of the Courts of the State of Ohio, under the laws of which State this defendant holds its charter, it has been held that the provisions of the constitution and laws of defendant providing that any member failing to pay, when and as they become due, all assessments and dues shall forfeit all right to benefits and indemnity for himself and beneficiary, and that no officer or member of any local council or other officer can waive the provisions of said constitution and laws, are valid provisions and binding upon all members, and defendant submits that said decisions and the statutes are binding upon this Court, claiming for itself the benefit of Section I of

Art. 4 of the Constitution of the United States, which re-·
quires that full faith and credit shall be given in each
State to the public Acts, records and judicial proceedings
of every other State, and defendant claims that such decis-
ions are entitled to full faith and credit in the Courts of
this State.

The essential portions of the opinion of the U. S. Circuit
Court of Appeals in this case (263 Fed., 502) which is
adopted by the Court, is as follows:

In April, 1912, John Theron Belue joined the local coun-
cil at Spartanburg, S. C., became an insured member of the
order, and received a certificate.    This certificate was after-
wards surrendered, and a new certificate issued, for reasons
not now material, under date of January 2, 1914.    His wife,
Mary Lucile Belue, plaintiff herein, was named the benefi-
ciary.    He died April 24, 1917, from the effects, as her
complaint alleges, of an accident wound upon his nose five
days before.    The defendant denied liability, and this suit
was brought.

The first defense set up in answer, and herein claimed to
have been established at the trial, is "that the death of the
deceased was not the result of external, violent, and acci-
dental means, producing bodily injury, as the proximate,
sole, and only cause of death, and that there were no visi-
ble marks upon the body of any such accidental injury, and
that if the death was due to infection there was no such
visible wound," as required by the contract of insurance.·
Belue died of erysipelas, which plaintiff asserts, and de-
fendant denies, was caused by a wound on the nose.    To
this issue most of the testimony was directed, much of it con-
flicting, and doctors as usual disagreeing.    It is not deemed
needful to review the opposing proofs, or otherwise discuss·
this dispute, as the case in our opinion turns on another
question.    We shall therefore assume, though without so
deciding, that the evidence relating to the cause of Belue's

death was properly submitted to the jury, and warranted their finding in plaintiff's favor.

(1)   The defense now to be considered is based upon certain provisions in the constitution of the order, which by the terms of the certificate is made a part of the insurance contract.   Among these, under the general heading of "Insurance," are the following:

"If any insured member fails to pay any or all of the fees, fines, costs, dues and assessments charged or levied against him as a member of this Order when and as the same becomes severally due and payable, he shall immediately on the happening of such default and by virtue thereof become delinquent and cease to be in good standing as an insured member, and he and every person claiming by, through or under him or his membership or his certificate of insurance at the time such default occurs and by virtue thereof shall be suspended from any and all rights to indemnity or benefits of whatever character under or through this article. Should such delinquent member at any time regain his good standing as an insured member of the Order, his restoration thereto shall in no wise operate to entitle him, through or under him or his membership or his certificate of insurance, to indemnity or benefits on account of any accident or injury received by him while not in good standing or on account of death resulting therefrom.

"The sending of notices of any assessments, fees, fines, costs or dues, or making demand for the same, shall not constitute or be held a waiver of such suspension, nor shall the fact that his certificate of insurance or of membership has not been duly cancelled be considered a waiver of such default.

"The forwarding of blanks for the purpose of proof as above provided or the investigation of any claim by a member or officer of the Order or any one authorized to represent the Order or the holding of any autopsy by any one representing the Order shall not constitute or be a waiver

18—S. C.—121

of any right or of any defense which the Order may have against any claim made against it, and the making of proof or the finding of notices shall be at the claimant's expense.

"No Grand or Subordinate Council, officer, member or agent of any Subordinate, Grand or the Supreme Council of the Order is authorized or permitted to waive any of the provisions of the Constitution of this Order relating to insurance as the same are now in force or may be hereafter enacted."

The substance of the foregoing provisions appears in the certificate issued to Belue.

The facts to be stated in this connection are practically undisputed. For a year or more after January 2, 1914, when he received the certificate in suit, Belue paid his dues and assessments with reasonable promptness. In June, 1916, however, he was suspended for failure to pay certain dues and assessments which had thertofore accrued. He was reinstated on August 12th following when he paid the amount for which he was then in arrears. No payment was made by him after that date. On April 19, 1917, the day he is alleged to have met with the accident that caused his death, and for some time before, he was in arrears for quarterly dues for three quarters, amounting to $3.00, and for four assessments of $2.00 each and had been repeatedly notified of his delinquency. On April 20 the secretary of the local council, one J. B. Reid, wrote Belue as follows:

"I have mailed you several statements regarding your dues and assessments, amounting to $11.00, which are past due. As long as these remain unpaid, your beneficiaries have no protection from the order in case of your accidental disability or death. Kindly mail your check at once covering the above amount."

This letter was opened by Belue's father, with whom Belue and his wife lived. On the following day the father carried the letter, with his own check for $11.00, to Reid's office, and, not finding him there, left the letter and check

on a desk, where Reid discovered them on his return. Reid was not personally acquainted with Belue and had no knowledge of his illness. Accordingly he took the check, which was later deposited in bank, and at once mailed to Belue the regular official receipt. It seems evident that Belue was then in a desperate condition; he died three days afterwards. In the following month, when the actual circumstances had been disclosed, the amount of the check was tendered back to the father, and upon his refusal to accept the same the tender was kept good by payment into Court. The testimony shows beyond dispute that the members of the Supreme Council, including the Supreme Secretary, who appears to have entire charge of such matters, were wholly ignorant of the facts above recited, until they were ascertained by Dr. Taylor, the Supreme Surgeon, who went to Spartanburg some time in May for the purpose of making an investigation.

"The case comes at once to a question of waiver. Plaintiff contends that the acceptance of the father's check by Reid, the local secretary, though in ignorance of Belue's illness or of any claim that he had suffered an accident, operated nevertheless to restore the insured to 'good standing' in all respects and to give him the status of a member who had not been delinquent. We are unable to sustain this contention. The certificate issued to Belue, reproducing a provision of the Constitution authorized by the laws of Ohio and of South Carolina, contains the unqualified statement that 'no officer, member or agent of any Subordinate, Grand, or the Supreme Council of this Order, is authorized or permitted to waive any of the provisions of the Constitution of this Order relating to insurance as the same are now in force or may be hereafter enacted.' And the Constitution provides in most explicit terms, repeated in the certificate, that if any insured member fails to pay his dues and assessments as and when they become payable, 'he shall immediately on the happening of such default and by virtue thereof'

cease to be in good standing and be suspended from all benefits and rights to indemnity; and that if such delinquent should at any time regain his good standing as an insured member, 'his restoration thereto shall in no wise operate to entitle him, or anyone claiming by, through or under him, or his membership or his certificate of insurance, to indemnity or benefits on account of any accident or injury received by him while not in good standing, or on account of death resulting therefrom.'

"The facts established at the trial permit no doubt of the full application of these provisions. It is virtually conceded, and surely cannot be denied, that the cause preceded, by some days at least, the payment made by his father. When that payment was unwittingly accepted, Belue had been in default for several months, and 'by virtue thereof' had forfeited all rights to indemnity under the insurance contract. True, he had not been formally 'suspended,' apparently because the local council had neglected its duty, and so for argument's sake it may be assumed that Reid's acceptance of the check on the 21st of April operated to reinstate Belue in good standing as an insured member from and after that date. By no valid process of reasoning can the transaction be given any greater effect. That it was not and could not be retroactive, to the extent of creating liability for an accident which happened during the period of delinquency, seems too plain for serious question. The whole argument of plaintiff is conclusively answered, as we think, by the fact that Belue was not insured at the time he is alleged to have received an injury, because he was then in arrears of long standing, and that no after payment to the local secretary, or even to the Supreme Council itself, could revive his insurance as against an accident occurring *in the meantime*. Not only does the contract expressly so declare, but it also declares in clearest terms that no officer or agent of the Order shall have authority or be permitted to waive its provisions. In our judgment the

local secretary, whether acting in that capacity or merely as a collecting agent for the Supreme Council, was wholly without power, by anything he did or could do, to relieve Belue from the consequences of his default, or to estop the defendant from denying liability because of that default. To hold otherwise would be to set at naught the basic provisions of the Constitution, and to imperil the stability and usefulness of the Order by making it responsible, in such circumstances as are here disclosed, for the mistakes and negligence, and even the bad faith, of local officials. The claim of waiver must be rejected.

"This conclusion appears to be supported by practically unanimous authority. Indeed, the decisions are so little in conflict that quotation would hardly be appropriate. In *Northern Assurance Company v. Building Association,* 183 U. S., 308, reviewing a great number of cases, and frequently cited, this subject of waiver is elaborately discussed. The principle there announced was soon after applied to a case directly in point, *Modern Woodmen of America v. Tevis,* 117 Fed., 379. Among many others of striking similarity are *Maryland Casualty Co. v. Slocum,* 255 Fed., 437; *Fee v. Nat. Masonic Ass'n,* 81 N. W., 483; *Crosby v. Vermont Accident Ins. Co.,* 80 Atlantic, 817; *Gayne v. Mass. B. & I. Co.,* 101 Atlantic, 212; and *Nat. Life & Accident Co. v. Reams,* 197 S. W., 332.

"If *Currence v. Sovereign Camp W. O. W.,* 95 S. C., 61, and *Crumley v. Sovereign Camp W. O. W.,* 102 S. C., 386, are of contrary import, as plaintiff contends, the same cannot be said of *Vant v. Grand Lodge K. of P.,* 102 S. C., 413, and *Sternheimer v. O. U. C. T. A.,* 107 S. C., 291, more recently decided. We are satisfied, after careful examination of all these cases, that the Supreme Court of South Carolina, upon the facts here of record, is not at variance with the views expressed in this opinion.

"It follows that the judgment must be reversed and the cause remanded with instructions to grant a new trial."

*Messrs. Bomar, Osborne & Brown* and *John A Millener,* for appellant, cite: *Company chartered to comply with laws of Ohio*: Secs. 9462, 9491, 13, 418-1; *S. C. laws relating to fraternal benefit associations*: 1 Civ. Code 1912, Secs. 2749, 2770. *What is accidental injury*: 127 U. S., 668; 241 Fed., 278; 79 Fed., 800; 155 Fed., 92; 107 S. C., 299. *Payment of dues in arrears after happening of accident cannot restore status of member*: 197 S. W., 332; 101 Atl. Rep., 212; 62 N. W., 467; 8 N. W., 483; 93; 92 N. Y., Supp., 1023; 72 Atl., 680; 80 Atl., 817. *Waiver*: 1 Civ. Code 1912, Sec. 2755; 102 S. C., 299; 104 S. C., 474; 102 S. C., 393; 95 S. C., 67; 17 Ohio Law Rep. No. 5, p. 575; 212 Fed., 132; 5 Ohio Civ. Ct. (N. S.) 446; 117 Fed., 369; 183 U. S., 308; 206 Fed., 412 417 Fed., 369; 177 Fed., 842; 228 U. S., 364; 255 Fed., 437; 117 U. S., 519; 231 U. S., 560; 231 U. S., 543; 40 L. R. A. (N. S.), 419; 10 L. Ed., 865; 10 L. Ed., 1044; 75 U. S., 575; Simp. Fed. Suit at Law, 234; 156 S. W., 721; 58 So., 100; 188 S. W., 699; 188 S. W., 1168; 55 Penn. Sup. Ct., 421; 17 L. R. A. (N. S.), 246; 38 L. R. A. (N. S.), 571; 25 L. R. A. (N. S.), 78; 4 L. R. A. (N. S.), 421; L. R. A. 1915-E, 152; 202 S. W., 698; 168 S.W., 1023; 206 S. W., 670; 255 Fed., 483; 263 Fed., 502; 108 S. C., 137. *Under "full faith and credit" clause the laws of Ohio must be followed:* 237 U. S., 541.

*Messrs. John Gary Evans* and *I. C. Blackwood,* for respondent, cite: *Law requires only the best evidence procurable*: 2 McC., 531. *Presumptions arising from proven facts*: 1 Bay., 139. *Accident*: 228 S. W., 877; 30 L. R. A., 209; 131 U. S., 100; 43 N. W., 732. *Presumption of accident:* 47 N. Y., 52; 127 N. S., 661; 144 Mass., 572; 5 N. Y., Supp., 215; 50 A. L. R., 441; 112 S. C., 336; 77 S. E., 1072; 88 N. E., 550; 83 Pac., 1013; 127 U. S., 661; 43 N. W., 731; 32 Pac., 696; 61 N. W., 485; 25 S. W., 6; 109 Fed., 847; 12 S. E., 18; 16 S. W., 723; 77

S. E., 1072; 136 N. W., 678; 97 N. W., 91; 115 N. W., 869; 83 Pac., 1013; 100 Fed., 582; 111 Fed., 773; 63 Pac., 180; 5 N. Y. Supp., 429; 131, U. S., 100 Ann. Cas., 1916-B, 222; 77 S. E., 1073; 88 N. E., 550; 116 N. W., 349; 64 S. E., 119; Ann. Cas. 1916B, 119. *In case of infected wound, the wound is the proximate cause:* 155 N. W., 214; 69 So., 80; 85 Fed., 401; 97 N. W., 91; 52 L. R. A. (N. S.), 1203; 17 L. R. A. (N. S.), 661; 135 Wis., 259. *Waiver:* 1 Civ. Code 1912, Secs. 2755, 2770; 102 S. C., 387; 102 S. C., 413; 107 S. C., 219; 108 S. E., 145; 108 S. E., 183; 107 S. C., 229; 194 S. W., 956; 199 S. W., 442; 22 U. S., 148; U. S., 234; 25 L. R. A. (N. S.), 78; 38 L. R. A. (N. S.), 571; 104 U. S., 766; 113 S. C., 430

July 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The plaintiff claimed to be a beneficiary under a benefit certificate issued by the defendant to her husband, J. T. Belue, on January 2, 1914, indemnifying him in the sum of $6,300.00 against death as the result of external violence and accidental means, and that the said J. T. Belue died under such circumstances on April 20, 1917. In September, 1917, she brought suit upon the certificate in the District Court of the United States for the Western District of South Carolina, and recovered judgment for the full amount claimed, $6,987.00. On writ of error to the Circuit Court of Appeals of the Fourth Circuit that Court reversed the judgment below and remanded the case for a new trial. Thereupon the plaintiff took an order of discontinuance in that Court, and instituted the present suit in the Court of Common Pleas for Spartanburg County, remitting all of the claim in excess of $3,000.00, and suing for that amount.

At the close of the evidence the defendant made a motion for a directed verdict, upon the grounds which will be reported, raising practically the same points as were raised and decided by the Circuit Court of Appeals. The evidence upon the two trials was the same, with the exception of an immaterial difference.

While under the case of *Logan v. R. R. Co.,* 82 S. C., 518; 64 S. E., 515, the judgment of the Circuit Court of Appeals is not *res judicata* upon the trial of the case, the statement of facts and conclusions of law contained in the opinion (263 Fed., 502) are entirely satisfactory to this Court, and that opinion is adopted as the opinion of this Court.

The defendant's motion for a directed verdict should have been granted, and, as the evidence shows that, upon the plaintiff's showing, she is not entitled to recover, the judgment will be reversed, with instructions to the Circuit Court to direct a verdict for the defendant under Rule 27 (90 S. E., xii).

Judgment reversed, with directions.

MR. CHIEF JUSTICE GARY concurs.

MR. JUSTICES FRASER and MARION concur in the result.