FULLER v. SOVEREIGN CAMP, W. O. W.

(134 S. E., 238)

1. INSURANCE.—Letter of beneficiary association to local clerk, directing him to return payments made on account of deceased member after his suspension, created him agent for such purpose, and his acts or omissions were the association's.

2. INSURANCE.—Conflicting testimony as to whether local clerk tendered payments made on account of deceased member after suspension as directed by beneficiary association *held* to raise question for jury.

3. INSURANCE.—Evidence that local clerk failed to tender dues paid on account of member after suspension as directed by beneficiary association tended to show waiver.

Before RICE, J., Oconee, fall term 1923. Affirmed.

Action by Mamie Fuller against the Sovereign Camp of the Woodmen of the World. Judgment for plaintiff and defendant appeals.

*Messrs. Melton & Belser,* for appellant cite: *Burden on plaintiff to prove waiver of conditions in insurance policy:* 107 S. C., 299; 43 S. C., 26. *General laws not applicable to fraternal insurance:* 102 S. C., 416. *Subordinate bodies*

---

NOTE: As to whether failure of the insurer to speak or act after notice of breach of policy constitute a waiver thereof, see notes in 25 L. R. A. (N. S.), 1; 51 L. R. A. (N. S.), 261. 14 R. C. L., p. 1187.

*without power to waive provisions of laws of association:*
Civ. Code, 1922, Sec. 4160. *Requirements of waiver:* 78
S. C., 461; 59 S. E., 145; 14 L. R. A. (N. S.), 850; 13
Ann. Cas., 1133; 26 R. C. L., 908. *Who are agents of
fraternal association; extent of agency:* Civ. Code, 1922
Secs. 4160 and 4185; 130 S. C., 453; 121 S. C., 179; 107
S. C., 291; 102 S. C., 413; 160 Mich., 180; 125 N. W., 49;
136 A. S. R., 425; 112 Va., 678; 72 S. E., 704; 38 L. R. A.
(N. S.), 471 and notes; 44 Wash., 230; 87 P., 127; 120 A.
S. R., 987; 7 L. R. A. (N. S.), 973; 66 Neb., 213; 92
N. W., 206; 4 L. R. A. (N. S.), 421 and notes; 153 Ky.,
636; 156 S. W., 132; 45 L. R. A. (N. S.), 1148; 102 So.,
625; 199 Ala., 41; 74 So., 235; 180 Cal., 192; 3 A. L. R.,
380. *Cases distinguished:* 125 S. C., 154; 124 S. C., 387;
119 S. C., 402; 116 S. C., 360; 102 S. C., 386; 95 S. C.,
61. *Unjust to allow recovery in this case:* 38 L. R. A. (N.
S.), 573, note; 19 R. C. G., 1277. *Laws of fraternal
associations should be upheld:* 22 Mo. App., 137.

*Messrs. J. W. Quattlebaum* and *Shelor & Hughes* also
for appellant.

*Mr. M. C. Long,* for respondent, cites: *Clerk of Local
Camp agent of Sovereign Camp:* Civ. Code, 1922 Sec.
4185; 127 S. E., 836; 119 S. C., 417; 116 S. C., 360; 115
S. E., 247; 102 S. C., 392; 78 S. C., 398; 77 S. C., 531.

August 6, 1926.

The opinion of the Court was delivered by MR. JUSTICE
STABLER.

On March 30, 1922, the defendant, a fraternal beneficiary
association, incorporated under the laws of the State of
Nebraska, issued to William H. Fuller, through a local camp
known as Hickory Camp, No. 104, a certificate of insurance
on his life in the sum of $1,000, his wife, Mrs. Mamie
Fuller, being named beneficiary. The insured, Fuller, died

on June 25, 1922. The association refused to pay the amount of the insurance, and this suit resulted.

It is alleged in the complaint, among other things, that at the time of the death of the said William H. Fuller he had complied with all the requirements of the contract of insurance and had paid to the defendant, its officers and agents, the monthly premiums called for in the said contract, and that when the insured died satisfactory proof of his death was immediately furnished the defendant, its officers, and agents. The defendant pleaded a general denial, and pleaded further that it had issued to the said William H. Fuller an insurance certificate for $1,000 payable only in case he died in good standing in the said society, according to the terms and conditions of the beneficiary certificate; that the insured had failed to pay his monthly assessments for the month of May, 1922, and as a result was suspended and his certificate of insurance rendered null and void; and, upon information and belief, that at the time the dues were paid, as was claimed to have been done for and on behalf of the insured, he was ill and died within a few hours thereafter.

The insurance certificate contained the following provisions:

"This certificate is issued and accepted subject to all the conditions set forth herein, and provisions of the constitution and laws in relation to membership, on the second and third pages hereof. The articles of incorporation and the constitution and laws of the society, and all amendments to each thereof, which may be made hereafter, the application for membership and medical examination, signed by the applicant, herein named as member, as approved by the Sovereign physician of this society, and this certificate, shall constitute the agreement between this society and the member, and copies of the same, certified by the Sovereign Clerk, shall be received in evidence as proof of the terms and con-

ditions thereof. Should this certificate be forfeited for any cause, acceptance of any payment from or for the member, or other act by any camp officer or member of the society after said forfeiture, shall not operate as an estoppel or as a waiver of the terms of this contract."

The answer further pleaded certain provisions of the constitution and by-laws of the association, as follows:

"Sec. 63 (a). Every member of this society shall pay to the clerk of his camp one annual assessment, or one monthly installment of assessment, as required by these laws, or by the provisions of his certificate, which shall be credited to and be known as the Sovereign Camp Fund, and he shall also pay such camp dues as may be required by the by-laws of his camp. He shall pay any additional Sovereign Camp Fund and camp dues, or either, which may be legally called.

(b) If he fails to make any such payments on or before the last day of the month he shall stand suspended, and during such suspension his beneficiary certificate shall be void.

Sec. 65. No suspended member shall be reinstated whose health is at the time impaired, or become impaired within 30 days after any attempted reinstatement, or who has used intoxicants to such an extent as to become frequently intoxicated, or who has become addicted to the use of opiates, cocaine, chloral, or other narcotic or poison to such an extent as to impair his health, or who has made false representations in his application to become a member, or been guilty of any of the offenses mentioned in these laws.

Sec. 66 (a). Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health at the time and continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics, he shall be reinstated and his beneficiary certificate again becomes valid.

(b) After the expiration of ten days, and within three months from date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty, signed by himself and witnessed, that he is in good health at the time, and continue in good health for thirty days thereafter, as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue.

(c) Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time.

Sec. 109 (g). The clerk of the camp shall not, by acts, representations, waivers or by vote of his camp, have any power or authority not delegated to him or to the camp by the Constitution and laws of this society to bind the Sovereign Camp or his camp."

The case was tried before Judge Rice and a jury at the fall term of the Court of Common Pleas for Oconee County, 1923. At the close of the testimony the defendant moved for a directed verdict on substantially the same grounds set out in its exceptions on appeal, but the motion was refused. The jury returned a verdict in favor of the plaintiff, and the defendant now comes to this Court on appeal, on the ground that the trial Judge should have directed a verdict for the defendant, because:

"(1) That evidence shows that at the time of his death W. H. Fuller was not a member in good standing, by reason of the fact that he failed to pay his dues for the month of May, 1922, and his policy was thereby made void.

"(2) That at the time of the payment of money to D. V. Wright, clerk of the local Camp, on June 24, 1922, the undisputed testimony is that the said W. H. Fuller was then very sick, and died within a few hours after, and such attempted reinstatement was null and void and of no effect.

"(3) That the payment of the amount intended to cover the dues in arrears could not and did not have that effect for the reason that W. H. Fuller failed to comply with the constitution and by-laws of the defendant society, and of the terms of his contract of insurance governing reinstatements, in that he failed to file with the clerk a written statement and certificate, signed by the said W. H. Fuller, that he was in good health, and warranting that he would remain so for thirty days, which was a condition precedent to reinstatement.

"(4) That there is absolutely no evidence of waiver, or estoppel, on the part of the Sovereign Camp, or any of its officers or agents, as the evidence shows beyond question that the Sovereign Camp repudiated the action of the clerk of the local camp and ordered him to return the money he had received, and this action by the Sovereign Camp shows its clear intention was not to sustain the action of the local clerk, and repudiated the attempt to reinstate him.

"(5) That under the laws of this state, and under the Constitution and laws of the society, the local clerk has no power to waive any of the said laws, and by the terms of the contract this attempt to reinstate this man and receive his void contract did not reinstate him.

"(6) That the said W. H. Fuller had been suspended on the books of the local camp and of the Sovereign Camp, and had never been reinstated as a member on either, but stood suspended at the time of his death, and his policy was void, and he could only be reinstated in the manner provided by said Sovereign Camp."

Section 4160 of the Code of Laws of 1922 (Section 2755, Code of Laws of 1912), is as follows:

"No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and

the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

Section 4185 of the Code of Laws of 1922 (Section 2770 of Code of Laws of 1912), reads as follows:

"When any fraternal insurance or beneficiary society, order or association of this or any other state, province, or territory, now or hereafter operating within this State, and having lodges, councils, chapters, branches or subordinate or branch offices duly established and organized in this state, and when under the laws, rules or regulations of such said society, order or association, members of the same are required to pay or customarily and with the knowledge and consent of such said society, order or association, do pay premiums, dues, assessments, fines, or other payments to any other member or person for the purpose of transmitting or delivering the same to the general office or to a division, subordinate or branch office of such said society, order or association, then such said members or person by whatever name or title known and called, so collecting such premiums, dues, assessments, fines, and other payments, shall be deemed and considered the agents of such said fraternal insurance, or beneficiary society, order or association."

It appears from the testimony that William H. Fuller became a member of the defendant's local camp No. 104, located at Fair Play, in Oconee County, during the month of April, 1922, and that at the same time he took out with the defendant an insurance certificate upon his life in the sum of $1,000, making his wife, the plaintiff herein, the beneficiary. He did not pay his monthly dues for May, 1922, during that month, and, accordingly, was suspended under the constitution and by-laws of the order. On June 24, 1922, Fuller being ill and his illness being known to the clerk of the local camp, one Stansell, his brother-in-law, paid over to the clerk Fuller's dues for May and June, and these dues

were accepted by the clerk, who issued a receipt therefor. No written statement and warranty was delivered to the clerk by Fuller as required by the constitution and by-laws. Fuller died the next morning. Thereafter on June 29, 1922, Wright, the local clerk, wrote the Sovereign Camp as follows:

"I am writing you for a little information. Sovereign W. H. Fuller was suspended on installment No. 5 for May. I did all that I could to keep him from being suspended. Now, on the 24th of June his brother-in-law came to me and said he wanted to pay Fuller's W. O. W. dues. I told him what the law required, and that he would not be reinstated under 30 days. He said Fuller was sick, but had never gone to bed. After talking about it some, I thought that I could get the statement in two or three days, and just unthought-edly I taken the money for Nos. 5 and 6, May & June. Now, to my surprise, they came to me Sunday, June 25, and said Fuller was dead—died that morning. I told them under the present law he was out, and he was not buried under the auspices of W. O. W. If I had had the least idea that he was in such a condition I would not have taken the money under no consideration. I had not seen him for some time myself. I was misled in the matter. Now, some of his immediate friends seems to think that he was reinstated— want to ignore the 30 days. They want your ruling on it as to whether he was reinstated or not. To satisfy them I promised to write you. So let me hear from you at your earliest convenience in regard to the matter. I regret for such things to come up. It is the first time that such a thing presented itself to me.

"P. S.—His friends look at it from the old law."

In reply to this letter the general attorney of the Sovereign Camp wrote to Wright, under date of July 14, 1922, as follows:

"Re: Wm. H. Fuller certificate:                          ₀

"The Sovereign Commander's office has referred to me your letter of the 29th ult., concerning the suspension of the above named. You certainly should have insisted upon strictly carrying out the provisions of the constitution, laws and by-laws relative to reinstatement, and you should not have accepted any money for his arrearages after he was suspended, without having him comply with the law. Even if a member is suspended for only one day, he is ineligible for reinstatement unless he is in good health, and after ten days' suspension he is required to furnish a written statement to that effect.

"Furthermore, the Constitution, laws and by-laws of the society provide that no attempted reinstatement shall be effective unless the suspended person is in fact in good health at the time. Therefore the effort which was made to reinstate him by paying you his arrearages while he was sick is not effective, and there is no valid claim against the society by reason of his subsequent death.

"You will immediately return all payments which may have been made to you on account of the deceased since his suspension, and you will not accept any more payments on his account under any circumstances."

The one question presented by this appeal is, Was there a waiver by the Sovereign Camp of the forfeiture of the certificate of insurance?

The trial Judge, in his charge to the jury, said without objection by either plaintiff or defendant:

"Now, gentlemen, the point in this case, as both attorneys have stated to you, is as to whether or not there was a waiver of certain conditions in this policy."

Proceeding in elucidation of this charge, he defined waiver as the "voluntary relinquishment of a known right," and narrowed the question of waiver in this case to the one question as to whether or not the Sovereign Camp, with knowledge that Fuller had not complied with all the requirements

for reinstatement, retained the back dues which had been paid in on behalf of Fuller without tendering them back or offering to return them, thereby waiving the additional requirements for reinstatement.   In this connection he said:

"But did the company, after they found out the condition in the first place, through the clerk—and we are coming to questions now which are disputed, and on which you will have to find there is a contrariety of evidence on that—did Mr. Wright, when he accepted the premium, acting for the company, know that Mr. Fuller was in bad health, that he was sick?  Then, after they found out afterwards that he was dead, did they retain the money or premium which he paid as back dues?  Did they tender it back to the party who paid it to him for Mr. Fuller?  If they tendered it back, gentlemen then there wasn't any waiver.   Now, this is proceeding upon the fact that they knew, and I believe there is no dispute that Mr. Wright knew that the man was dead.   Now, did the company know at this time, when they held the money, that this man was dead?  And you can take the correspondence there, and you can see as to whether or not they knew.   And, as I told you, it was impossible for the man to comply with those conditions in order for him to be reinstated, because he died before the time that the law of the order said would have to elapse before he could be reinstated.   There is no dispute on that.   Now, did the Woodmen of the World, acting through the clerk, have knowledge of that, and keep the money    If they did that, and made no offer to return it, gentlemen, then they will have to pay this insurance; that's all there is to it. * * * Now, it is for you gentlemen to say as to which one of those things occurred, and it is for you to say as to whether or not, if they did retain the money without offering to return it, without a tender of the money, as to whether or not they didn't waive the conditions in this policy, this furnishing of the health certificate, and so on.   Because if they retained

it without any offer, as I have tried to explain to you, to return the money, or attempt to, then they have got this policy to pay, because they are utterly estopped to say it is void; they have waived these conditions in the policy and the policy must hold good."

Under this statement of the issues and the law, the question of waiver by the local clerk in accepting the back dues and issuing the receipt therefor is eliminated from the case. Indeed, the trial Judge expressly refused a request to charge the jury that it was "a question of fact for the jury as to whether or not the clerk waived the requirement of this health certificate at the time the dues were paid and this receipt was given," and his refusal to make this charge is entirely in harmony with the theory of the case which he stated to the jury in his general charge, and which was accepted by both parties without objection.

The question of waiver therefore turns upon the question as to whether or not the Sovereign Camp tendered back or offered to return the back dues paid, on behalf of the insured, to the local clerk, who was its agent to collect dues from its members. The letter of the Sovereign Camp to the local clerk directed him to return the payments made on account of the deceased since his suspension, thus creating him their agent for that purpose, and his acts of omission and commission thereafter in relation to this matter became the acts of the Sovereign Camp. The testimony as to whether or not he made a tender of or an offer to return these back dues is in conflict, and therefore the trial Judge properly submitted the question to the jury. Our conclusion in this case is not out of harmony with any of the cases cited by counsel for the appellant in their argument.

The decision in the *Currence case* rested not upon any waiver by the clerk of the local camp at the time he received the back dues, but upon the view that the

clerk of the Sovereign Camp, from a letter sent to him by the local clerk, knew or had notice, which, if pursued with due diligence, would have led to knowledge that the certificate of good health had not been delivered at the time of the payment of back dues, the testimony thus tending to show that there was waiver by the Sovereign Camp. *Currence v. Sovereign Camp W. O. W.*, 95 S. C., 61; 78 S. E., 442. In the present case there was testimony tending to show that the Sovereign Camp was apprised of the fact that the local clerk had collected Fuller's back dues, but had not received the health certificate; that the Sovereign Camp created the local clerk its agent to return the back dues; and that he failed to tender back or offer to return them. This testimony tended to show waiver on the part of the Sovereign Camp.

While the *Crumley case* held that the local clerk's acts in reinstating or endeavoring to reinstate a suspended member were obligatory on the Sovereign Camp, in the first instance, with power on its part, within a reasonable time, to review the action of the local clerk, yet the Court assigned another reason why a verdict should not have been directed in favor of the defendants, to wit: That the Sovereign Camp was estopped by the conduct of the local clerk, its agent, in discharging certain duties incident or appertaining to his office. *Crumley v. Sovereign Camp, W. O. W.*, 102 S. C., 386; 86 S. E., 954. So in the present case the Sovereign Camp constituted the local clerk its agent for the purpose of returning the back dues that had been paid in, and is now estopped from denying that his acts are its own, and, if such acts amount to waiver, they become waiver on the part of the Sovereign Camp.

In the *Vant case* the plaintiff sought to overcome the defense on the ground that it had been waived by acceptance and retention of premiums from Vant after knowledge of the facts relied on as a defense. The Court held that a

verdict should have been directed for the defendant, but differentiated this case from the *Currence case* by saying that there was no testimony that any knowledge or notice of the facts was imparted to the Grand Lodge, or any officer thereof, so as to bring the case within the principle decided in the *Currence case.. Vant v. Grand Lodge K. of P.,* 102 S. C., 413; 86 S. E., 677. Again, in the *Sternheimer case,* where it was held that the custom of a local lodge of a mutual benefit order not to declare forfeiture upon delinquency did not constitute waiver on the part of the order, especially where the Constitution prohibited such waiver and was agreed to by the insured, the Court pointed out that there was no evidence tending to show that the Supreme Council or any of its officers had notice of the custom. *Sternheimer v. O. U. C. T. A.,* 107 S. C., 291; 93 S. E., 8. In the present case it is undisputed that the Sovereign Camp had knowledge that the health certificate had not been filed, or notice which, if reasonably pursued, would have led to such knowledge.

In the *Weathers case* the Court went further than we go in this case, deciding that case practically upon the grounds of the agency of the local clerk for the Sovereign Camp in reinstating a suspended member, as in the *Crumley case. Weathers v. Sovereign Camp, W. O. W.,* 119 S. C., 402; 112 S. E., 44. The case at bar depends not at all upon the general agency of the local clerk for the Sovereign Camp, under the Constitution and by-laws of the Sovereign Camp and the statutes applicable thereto, but upon the specific agency created in him by the Sovereign Camp for the particular purpose of returing the back dues that had been paid in.

In the *Belue case* it was held that a benefit association by receiving dues from and reinstating a delinquent member then suffering from an injury which caused his death, but which was unknown to the officer receiving the money, did

not waive a condition of the contract exempting it from liability on account of injury received by a member while suspended for delinquency. In that case the Supreme Council for some time was wholly ignorant of the fact that Belue had sustained an injury before the back dues were paid, but when the actual circumstances were disclosed the amount of the back dues paid in was tendered back and the tender kept good by deposit with the clerk of the Court, and the Court refused to sustain the contention of waiver. *Belue v. U. C. T.,* 121 S. C., 179; 117 S. E., 591. In the case at bar the Sovereign Camp knew that the local clerk had accepted back dues without requiring the health certificate and that the member was dead.

In our brief review of these adjudicated cases in connection with the case at bar, we have not considered the findings of the Court in these cases with reference to the agency of the local clerk, under the constitution and by-laws of the supreme governing body, to waive the additional requirements for reinstatement, such as the health certificate, by receiving back dues without demanding the fulfillment of such other conditions, since, as already pointed out, this question is not involved in the present case. We do not share the apprehension of counsel for the appellant that to affirm the judgment in this case will result in great harm to fraternal insurance in this state. This decision involves no new point of law, but, as we have shown, is entirely in harmony with cases already adjudicated. If the testimony in this case had been conclusive that the Sovereign Camp tendered back or made an offer to return the back dues which had been paid to it on behalf of the insured, a directed verdict for the defendant would have been proper. We may say in passing that there are more satisfactory methods of making tender than through unwitnessd oral conversation.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and BLEASE concur.

MR. JUSTICE COTHRAN and MR. ACTING ASSOCIATE JUS-TICE R. O. PURDY dissent.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE COTHRAN (dissenting): I am convinced that the defendant's motion for a directed verdict in this case should have been granted, and therefore I dissent from the affirmance of the judgment indicated in the opinion of Mr. Justice Stabler, for the reasons which follow:

The undisputed facts are that on March 30, 1922, the defendant issued to William H. Fuller, through one of its local camps, at Fair Play, S. C., a certificate of membership in the fraternal association, carrying insurance upon his life in the sum of $1,000, the plaintiff, Mamie Fuller, his wife, being named as beneficiary. He paid the initiation fees and monthly dues for the month of April, but defaulted in the payment of the monthly dues for the month of May. According to the rule of the association, "If he fails to make any such payments (referring to the required assessments and dues), on or before the last day of the month, he shall stand suspended, and during such suspension his beneficiary certificate shall be void," the failure to pay the May assessment automatically caused a suspension of his membership and of his rights under the certificate, as of June 1, 1922. On June 15th, the clerk of the local camp forwarded to the Sovereign Camp, at Omaha, Neb., a report, upon a printed form furnished to him, of members suspended, transferred, died, etc., with certain remittances. In the list of suspended members was the name of William H. Fuller. On June 24th Fuller was ill, and had been so for some weeks, with a throat affection. On that day his brother-in-law, H. M. Stansell (so far as the record shows, without direction from either Mr. or Mrs. Fuller), paid to the local clerk Fuller's assessments and dues for the months

of May and June. The local clerk gave him a receipt as follows:

"Clerk's Official Receipt. Woodmen of the World. Date, June 24, 1922. Received of W. H. Fuller * * * Sovereign Camp Fund monthly installment No. 5—6, $4.56. Monthly camp dues $0.30. Total $4.86. If any part of the above amount is paid for the purpose of reinstating the person above, named, it is received upon the condition and agreement that said sum so paid on account of said person, shall not cause his reinstatement except as provided by the Constitution and by-laws of the Sovereign Camp of the Woodmen of the World, nor unless said person has complied with the provisions of said Constitution and laws and by-laws with respect to reinstatement. [Signed] D. V. Wright, Clerk Hickory Camp No. 104 State, S. C."

Sections 65 and 66 of the Constitution and by-laws of the order (set out in full in the opinion of Mr. Justice Stabler), provide that no suspended member shall be reinstated whose health is at the time impaired, or becomes impaired within 30 days after any attempted reinstatement; that a suspended member shall have the privilege of reinstatement upon the payment of all arrearages within 10 days after his suspension, provided he is in good health at the time, and so continues for 30 days thereafter; and that a suspended member shall have the privilege of reinstatement, after the expiration of ten days and within three months after his suspension, upon the payment of all arrearages and the delivery of a written statement and warranty, signed by himself and witnessed, that he is in good health at the time and continues in good health for 30 days thereafter, as a condition precedent to reinstatement. It is conceded that the member was not in good health at the time the payment of the dues for May and June (June 24th) were made; that he did not apply for reinstatement within 10 days after his suspension on June 1st; and that the payment of arrearages

made on June 24th was not accompanied by the written statement required of a suspended member who did not apply for reinstatement within 10 days after his suspension. The payment on June 24th was made about 3 o'clock on Saturday afternoon; Fuller died early in the morning of Sunday, June 25th.

It thus appears, beyond the shadow of a doubt, that Fuller was in default in making payment of his May assessment; that automatically he was suspended as of June 1st; that he was an ill man on June 24th when the attempt at reinstatement was made; that he had been ill for at least four weeks prior to that time; that he did not make application for reinstatement within 10 days after the date of his automatic suspension; that the voluntary payment by Stansell of the arrearages for May and June, considered as an attempt at reinstatement, coming after the limitation of 10 days following the suspension on June 1st, was not accompanied by the written statement required; that when he made the payment Fuller was a dying man; and that Stansell's voluntary action was a race with death.

Under these circumstances I do not see how a judgment against the defendant can be sustained, unless there be at least some evidence of a waiver by the defendant of the express conditions upon which the certificate was issued.

While in the opinion of Mr. Justice Stabler it is said, "In our brief review of these adjudicated cases in connection with the case at bar, we have not considered the findings of the Court in these cases with reference to the agency of the local clerk, under the constitution and by-laws of the supreme governing body, to waive the additional requirements for reinstatement, such as the health certificate, by receiving back dues without demanding the fulfillment of such other conditions, since as already pointed out, this question is not involved in the present case," what he had "already pointed out" clearly points to the conclusion that nothing done by

the local clerk could be relied upon as evidence of waiver.

If there should be the sligthest doubt upon the proposition that the local clerk did not have the power to waive any of said conditions, the resolution of such doubt must be complete under the Code of 1922, vol. 3, § 4160:

"*Subordinate Bodies to Have No Power to Waive Provisions of Laws of Association.*—No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

—and the following cases construing it. *Currence v. Woodmen,* 95 S. C., 61; 78 S. E., 442. *Crumley v. Woodmen,* 102 S. C., 386; 86 S. E., 954. *Vant v. Grand Lodge,* 102 S. C., 413; 86 S. E., 677. *Outlaw v. Council,* 107 S. C., 226; 92 S. E., 469. *Sternheimer v. U. C. T.,* 107 S. C., 291; 93 S. E.; 8. *Dillingham v. Jr. O.,* 113 S. C., 430; 102 S. E., 721.

Besides, the rules of the order provide:

"*Waivers.*—No officer, employee, or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which this beneficiary certificate is issued, or to change, vary, or waive any of the provisions of the Constitution and laws of the society, nor shall any custom on the part of any camp or any number of camps, with or without the knowledge of any Sovereign officer, have the effect of so changing, modifying, waiving or foregoing such laws or requirements. This beneficiary certificate is issued only upon the conditions stated herein and subject to the Constitution and laws of the society, now in force or hereafter enacted, nor shall the knowledge or acts of any officer or employee of the society cause a waiver of the provisions of these laws by the society, or an estoppel of the society."

And even if the local clerk had the power to waive any of the conditions, there is no evidence of his act or intention looking thereto. The certificate which the clerk himself delivered to Stansell expressly stated that the acceptance of the dues was only conditional so far as reinstatement was concerned, and there was no evidence whatsoever that the clerk knew of Fuller's condition, or that he intended to waive the provisions as to his health. On the contrary, the evidence shows clearly that the clerk never took Fuller off the list of suspended members, never reported to the Sovereign Camp that Fuller was reinstated, never sent the dues received to the Sovereign Camp, and consistently maintained the position that Fuller was suspended at the time of his death. Moreover, whatever may be the contention of the respondent as to the other requirements, there can be no argument whatsoever that even the local clerk intended to waive the provision requiring the members to continue in good health for 30 days after the attempted reinstatement.

The learned justice, however, discovers some evidence of waiver upon the part of the Sovereign Camp—a point not suggested in the Judge's charge or in the argument of counsel for the respondent, nor alluded to in the argument of counsel for the appellant. His processs of reasoning is, that since the Sovereign Camp was notified after the member's death that the arrearages had been paid without the accompanying written statement, and that although the Sovereign Camp repudiated the act of the local clerk in accepting the payment without the statement and directed him to return the money, this constituted the local clerk the agent of the Sovereign Camp to return the money, and that, there being some evidence that the clerk did not do so, the Sovereign Camp must be considered as having retained the money, that consequently the inference of waiver from the fact of such retention was sufficient to carry the case to the

jury.   The facts upon which this conclusion is based are as follows:

Fuller died as stated on June 25th; on the 29th the local clerk wrote to the Sovereign Camp the letter set forth in the opinion of Mr. Justice Stabler, stating the facts.   In reply the Sovereign Camp wrote the letter of July 14th, also set forth in the opinion, utterly repudiating the act of the local clerk and directing him to return the money.   The local clerk testified that he offered to return the money to Stansell, but that he refused, "under the circumstances," to take it.   Stansell does not deny that the local clerk expressed a willingness to return the money, but says that he told him, "I wasn't suing, it was my sister."   While as a legal tender the conduct of the local clerk may have been insufficient, there is every evidence that it would not have been accepted if it had been made in the most approved manner. The question, however, is not one of strict compliance with the law of tender, but whether the money was retained by the local clerk under circumstances which implied a purpose not to insist upon the conditions of reinstatement—a conclusion which might be rebutted without proving a technical tender.             .

But assume for the sake of argument that the local clerk made no effort to return the money, that he converted it to his own use and still has it, I cannot see how his failure to carry out specific instructions by the Sovereign Camp which did all in its power to assert its rights, can be imputed to the Sovereign Camp as evidence of its intention to waive the nonperformance of the conditions of reinstatement. The Sovereign Camp did not have the money; it was in the clerk's hands, practically offered to the Sovereign Camp in his letter of June 29th and refused. . What more could it have done than was done to stand upon its legal rights by repudiating the act of the clerk and directing him to return it.   The decision amounts to a declaration that the jury was au-

thorized to find that the Sovereign Camp intended to waive its objection to a proceeding, when it was doing all in its power to register that objection, and the record shows it.

Suppose the money had been remitted by the clerk to the Sovereign Camp and had reached it before the death of Fuller, and that the Sovereign Camp had promptly expressed it back to the member, and that it had been lost or appropriated by the carrier—could it be contended that because the agent had failed in transmission the Sovereign Camp had retained the money and thereby had waived the objections which it had done all in its powers to communicate?

Assume for the sake of argument that the local clerk was constituted the agent of the Sovereign Camp to return the money. It may be that in an action by the insured against the Sovereign Camp it would have been responsible for a defalcation to this extent of the local clerk, but to permit an inference that because the local clerk did not obey the specific instructions to return it the Sovereign Camp must be charged with its retention and be held to have voluntarily assumed an obligation which it was at the same time absolutely repudiating appears to me illogical to a distressing extent.

A waiver of one's known rights is not a matter to be lightly treated or easily established; men do not do business that way, insurance companies, however, appear to be subject to different rules of human action from other people.

"To constitute a waiver within the definitions already given, it is essential that there be an existing right, benefit or advantage, a knowledge, actual or constructive, of its existence, and an intention to waive it." 26 R. C. L., 908.

"No man can be bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive and the fact that he knows his rights and intends to waive them must plainly appear." Id. 909.

In *State v. Board,* 78 S. C., 461; 59 S. E., 145; 14 L. R. A. (N. S.), 850; 13 Ann. Cas., 1133, it is said:

"By waiver is meant the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such a right."

Before an insurance company can be held to have waived a forfeiture provided for in the contract, it must appear: (a) That it had knowledge of the act of the insured which worked a forfeiture; (b)` that it entered into negotiations with the insured which .recognized the continued validity of the policy; or (c) that the insured was induced by such negotiations, of the character stated, to incur expense or trouble under the belief that his loss would be paid, the forfeiture waived.

In *Norris v. Insurance Co.,* 57 S. C., 358; 35 S. E., 572, the following charge was approved by the Court:

"When an insurance company, with knowledge of the forfeiture of a policy, sends an agent to adjust the loss, or does any other act which recognizes the validity of the policy, it is evidence which the jury may consider in determining whether there was intention on the part of the company to waive forfeiture."

In the extract from the case of *Titus v. Insurance Co.,* 81 N. Y., 410, which is quoted in the case of *Kingman v. Insurance Co.,* 54 S. C., 599; 32 S. E., 762, this statement occurs:

" * * * * If in any negotiation or transaction with the assured, after knowledge of the forfeiture, it (the insurer) recognizes the continued validity of the policy, or does acts based thereon [that is, I interpolate, upon such recognition], or requires the assured by virtue thereof to do some act, or incur some trouble or expense, the forfeiture is, as matter of law, waived."

The opinion in the *Kingman case,* 54 S. C., 599; 32 S. E., 762, states the law exactly as I interpret it:

"Waiver does involve the assent of the insurer, since it is 'the intentional relinquishment of a known right,' but this intent to relinquish the right to avoid a policy for breach of condition may be evidenced by acts or conduct of the insurer, after knowledge of a breach, recognizing the policy as a valid existing contract, or the insurer may be estopped to deny the intent to relinquish its right by such conduct after knowledge of the breach as puts the insured to trouble and expense on the reasonable belief that the insurer regards the policy as valid."

In *Montgomery v. Insurance Co.,* 55 S. C., 1; 32 S. E., 723, the Court evidently did not intend to change the rule laid down in the *Kingman case,* for it cites that case with approval, and adds:

"The question at last is, has the insurer at any time relinquished the right to deny liability for the cause of removal after knowledge, or has it by its conduct recognized the policy as not invalid on such ground, and thereby subjected the insured to expense or inconvenience in the reasonable belief that such removal was consented to or acquiesced in by the insurer?"

In *Cobb v. Insurance Co.,* 78 S. C., 388; 58 S. E., 1099, the Court reaffirms the doctrine of the *Kingman* and *Montgomery cases* in these words:

"But trouble taken by Cobb, plaintiff's manager, at the instance of Norris, defendant's local agent, with the acquiescence of its adjuster, in procuring signatures to the statement of the value of stock, with reasonable belief that the defendant regarded the policy as valid, * * * would ordinarily be some evidence of waiver."

The rule is very clearly stated in the case of *Queen Ins. Co. v. Patterson Drug Co.,* 73 Fla., 665; 74 So., 807; L. R. A., 1917-D, 1091, quoting from *Antes v. Assurance Co.,* 84 Iowa, 355; 51 N. W., 7:

"Where a company, with full knowledge of the facts out

of which the forfeiture [of the policy] arose, by its acts recognized the policy as a valid and subsisting contract, and induced the plaintiff to act in that belief and to incur trouble and expense, such action would be a waiver of the condition under which the forfeiture arose.

"In order to constitute a waiver by the insurer of a provision of the policy, there must be some affirmative act on its part, such as to induce insured to rest on a well-founded belief that strict performance of the condition claimed to be waived will not be insisted upon, and mere neglect to insist upon a forfeiture is of itself insufficient." *Rundell v. Insurance Co.,* 128 Iowa, 575; 105 N. W., 112; 25 L. R. A. (N. S.), 20.

"It is essential to the waiver of a forfeiture of a policy of life insurance that there be a recognition of its validity, after a knowledge of the forfeiture, by an agent who is not denied by the policy the power to do it." *Lamb v. Insurance Co.,* 22 App. Div., 552; 48 N. Y. S., 123.

"Waiver is essentially a matter of intention, and to establish it there must be some declaration or act, from which the insured might reasonably infer that the insurer did not mean to insist upon a right which because of a change of position induced thereby would be inequitable to enforce." *Shay v. Association,* 28 Pa. Super. Ct., 527.

In *New York L. Ins. Co. v. Eggleston,* 96 U. S., 572; 24 L. Ed., 841, it is said:

"Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

But, aside from this suggestion, I think that the authorities everywhere, and particularly in this state, recognizing the

distinction between waiver and estoppel, sustain the proposition that, when the breach of a condition is not discovered until after the loss, no act on the part of the insurance company can constitute a waiver of the breach of the contract, short of actual payment of the loss, or a new contract upon a new consideration. Of course, if after the loss the insurance company acquires the knowledge of the breach, and does an act recognizing the continued validity of the policy, in consequence of which the insured, acting upon a reasonable belief that the breach will not be insisted upon, subjects himself to trouble or incurs expense, so that it would be inequitable to permit the insurance company to resume its claim to immunity, the insurance company will be estopped from doing so. It is equally true that, if the insurance company before the loss acquires knowledge of the breach, and takes no steps to exercise its right to cancel the policy and return the premium, but allows the insured to continue under the impression that his policy is good, thus preventing him from protecting himself in other insurance, in the event of a loss the insurance company will be held either to have waived its right to insist upon the breach or to be estopped from doing so.

In the case of *Pearlstine v. Insurance Co.*, 70 S. C., 75; 49 S. E., 4, the precise question arose and was decided. The insurance company defended upon the ground that the plaintiff was not the unconditional and sole owner of the property insured; that that fact, constituting a breach of condition in the policy, was not discovered until after the loss. The plaintiff countered by contending that the company, after knowledge of the breach and after the fire, failed to return the premium, and thereby waived the breach. The Court said in reference to this contention:

"The defendant next submits there was error in refusing to charge that a failure to return the premium after the fire does not amount to waiver of any of the conditions of

the policy.   Good faith would seem to require the insurer to cancel the policy and return the unearned premium, if before the fire, while the policy was current, it had notice that the insured had so violated the policy that under its terms he would recover nothing in case of loss.   In such case the insurer would allow the insured to hold the policy and rely upon its provisions, while at the same time it retained the consideration for the unexpired term, knowing the policy to be valueless.   For this reason, the retention before the fire, of the unearned premium for the unexpired term, with notice that the policy had become void under its terms, may be held evidence of waiver.   It is held in *Schroeder v. Ins. Co.,* 51 S. C., 180; 28 S. E., 371, that if an insurance company actually received the premium after the fire, knowing that other insurance had been taken, in violation of the policy, this would be evidence of its election to waive the violation. Where, however, the premium is paid, and in consideration of it the company contemporaneously issues its policy, which is a contract to insure on certain conditions those conditions in a material particular without the knowledge of the insurer, in case of loss the insurer is not bound to return the consideration of the policy before standing upon its terms.   The consideration has been paid, not for an absolute promise, but for a promise of the insurer to hold itself liable for loss on certain conditions.   The company does not fail in its promise by insisting on its conditions; not having broken its contract, it has a right to retain the consideration.   The insured has received all he contracted and paid for—conditional insurance—and he has no right to demand a return of the price paid from the insurer on pain of liability for unconditional insurance.   After the loss occurs as to the property destroyed, the policy is no longer current, but has become matured by reason of the fire, and no question of good faith is involved in retaining the premium, because the rights of the parties are then fixed.   Upon these con-

16—S. C.—136.

siderations rest *Norris v. Ins. Co.*, 55 S. C., 450; 33 S. E., 566 [74 Am. St. Rep., 765], and *Young v. Insurance Co.*, 68 S. C., 387 [47 S. E., 681]."

This case has not been overruled, or even modified, so far as I am advised; on the contrary, it has been cited with approval in *Powell v. Insurance Co.*, 97 S. C., 375; 81 S. E., 654. *Etheredge v. Insurance Co.*, 102 S. C., 313; 86 S. E., 687, and several others upon a different point. In *Young v. Insurance Co.*, 68 S. C., 387; 47 S. E., 681, it is said:

"It has been held in *Norris v. Insurance Co.*, 55 S. C., 450; 33 S. E., 566 [74 Am. St. Rep., 765] that retention of the premium after the fire was no evidence of waiver."

In *McBryde v. Insurance Co.*, 55 S. C., 589; 33 S. E., 729; 74 Am. St. Rep., 769, the Court said:

"All the testimony as to waiver related to facts occurring after the property had been destroyed. Under these circumstances there was no foundation upon which waiver could be predicated."

In a note to 25 L. R. A. (N. S.), 3, it is said:

"It is manifest that the situation of the parties is different, where the insurer acquires knowledge after loss of a breach of the policy occurring before loss, than it is where notice reaches him before loss. Aside from the requirements in respect to proofs of loss, the contract has fulfilled its purpose when the event which it provides against has happened. The rights of the parties are then fixed. There is no possibility that the insured can be misled to his harm by silence or nonaction of the company as to any breach of the policy which occurred before loss. The company, of course, may pay if it wishes, but if it fails to let the insured know what it intends to do, the latter cannot be injured, for, after loss, it is too late for him to get other insurance. Therefore it would seem to be the logical result of this situation, not only that mere silence or nonaction on the part of the company

will not affect its rights, but that any direct act in the nature of waiver, any promise to pay, after knowledge of the breach, must be based on a good consideration, or else the elements of a technical estoppel must be present; that is, the company, by its conduct, must have put the insurer to some disadvantage, or caused him some expense, before it can be made liable. This in itself would be consideration enough to support an implied promise to pay. The cases appear to be harmonious in holding that where notice of breach of the policy before loss has not reached the insurer until after loss, mere silence or nonaction will not operate to bind the latter."

Besides, I think that to charge the Sovereign Camp with the alleged action of the local clerk as its agent, in not tendering the money back in obedience to the direction of the Sovereign Camp, would be a clear violation of Section 4160, Vol. 3, Code of 1922, above quoted.

In addition to all of this, and assuming for the sake of argument that there was some evidence tending to show that the Sovereign Camp, through the action of its agent, the local clerk, in not returning the payment of arrearages, waived the requirement of a written statement and warranty relating to health, there is not a particle of evidence that it waived or could have waived the condition that after the payment of the arrearages, and after the delivery of the written statement and warranty, the reinstatement could not become effective unless the member continued in good health for thirty days thereafter. Attached to the certificate and specifically made a part of it is the following condition relating to reinstatements:

"After the expiration of ten days and within three months from date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues, and deliver to him as a condition precedent to reinstatement a written statement and warranty signed by him-

self and witnessed, that he is in good health at the time and not addicted to the excessive use of intoxicants or narcotics and waiving all rights thereto if such written statement or warranty be untrue, and must continue in good health for thirty days thereafter."

It seems perfectly clear to me that Fuller, having allowed ten days after his suspension to elapse, had the contract right to pay up his arrearages within three months and to be reinstated, provided that he was then in good health, furnished the written statement required, and continued in good health for 30 days thereafter. He had the legal contractual right to pay the arrearages within that period, and the local clerk had the right and was obligated to receive them provided Fuller was then in good health and accompanied the application for reinstatement with the necessary statement. If Fuller had complied with both of these conditions, or the Sovereign Camp may be held to have waived them, the reinstatement could not have became effective until Fuller had complied with the third condition—"continue in good health for 30 days thereafter"—as to which there is no pretense, for he died the following day. Even if the Sovereign Camp had specifically directed the local clerk to waive the condition of Fuller's health at the time and his failure to furnish the statements required, the alleged retention of the back dues by the Sovereign Camp, could not possibly be considered as evidence of its intention to waive the third condition, for Fuller died before its expiration, and, according to the plain terms of the contract of insurance, the reinstatement had not then become effective.

In any possible view of the case I think that the defendant was entitled to a directed verdict.

MR. ACTING ASSOCIATE JUSTICE PURDY (concurring): I concur in this dissenting opinion of Mr. Justice Cothran. In addition to the authorities cited by him, reference is made to the case of *Joye v. Insurance Co.,* 54 S. C., 371; 32

S. E., 446, where it is held that even a promise to pay by the president of the company, followed by a denial of liability, is not a waiver.

To hold the defendant-appellant liable in this case, under the facts of the case, tends to set aside the provisions of the statute and the rules of the order, and results practically in insuring a dying man.